## ADAMS AND ANOTHER V. EDGERTON.

1. MORTGAGES: *Foreclosure. Parties, etc.*
   A mortgagee should not, in an action to foreclose his mortgage, make a prior vendee of the land a party to the suit to avoid his title as fraudulent. He is neither a necessary nor proper party. His title should be litigated in an action of ejectment or other appropriate action. But if made a party it is only a misjoinder of parties and causes of action, not affecting the jurisdiction of the court, and can be corrected only by motion to strike out the party and cause of action improperly joined; and the objection is waived unless made.

2. FRAUDULENT CONVEYANCES: *Post-nuptial settlements.*
   A voluntary post-nuptial settlement upon a wife is presumptively fraudulent against existing creditors, and casts upon those holding under it the *onus* of proving the entire good faith of the transaction, and that the gift was a reasonable provision for the wife, comprehending but a small portion of the husband's estate, and leaving ample means unincumbered for the satisfaction of his creditors.

3. SAME: *Same.*
   A voluntary settlement by a husband of all his property upon his wife, is absolutely void, not only as to existing creditors, but also as to subsequent *bona fide* purchasers without notice; and a mortgagee is a purchaser within the statute.

4. CONSTRUCTIVE NOTICE: *Registration by imperfect description.*
   The registry of a deed containing a description of the land so vague and indefinite as to be void, for uncertainty, is not notice to a subsequent purchaser of the land intended to be conveyed.


APPEAL from *Pulaski* Chancery Court.

Hon. D. W. CARROLL, Chancellor.


*P. C. Dooley,* for appellants.

Rector's deed to Celine E., his wife, is a good contract of sale, if it conveys no title. The description in the deed with her possession, is sufficiently certain to ascertain the property. She was put in possession and held the land

openly, notoriously and adversely until her death, and paid the full purchase price of the land. This possession and payment, with only a verbal contract, is a good sale. *44 Ark., 79; 45 ib., 19; 42 ib., 246; 30 ib., 249; 9 Wall., 1; Story Eq. Jur., sec. 719; 43 N. Y., 34; 32 Ark., 97; 21 ib., 137.*

The sale of the land to Celine E. was such as a court of equity will enforce, if no superior equities have attached. Edgerton has no such equities. He was not an innocent purchaser for value without notice. *98 Pa. St., 250; 4 Page, 215; 1 Yerg., 276; 6 Miss., 220; Jones' Mortg., sec. 470; 69 Ala., 529; 16 Pa. St., 123; 11 ib., 386; 29 ib., 160; 10 Whart., 220; 9 Am. Dec., 268; 40 ib., 389.*

His mortgage was to secure a *pre-existing debt.* He did not purchase the legal title. He was merely the mortgagee of an equity. *12 Ark., 286; 1 Cranch., 100; 3 ib., 138; 27 Ark., 98; 13 ib., 192; 29 ib., 568; 21 ib., 22.*

The defect of description is a latent ambiguity, and may be corrected by parol proof. See *5 Metc., 15; 7 Sm. & M., 111; 3 Col., 59; 11 Ill., 309; 10 B. Mon., 144; 45 Ark., 17; 31 ib., 253; 33 ib., 119; 30 ib., 644.*

Celine E. Rector died in possession of the land, and at her death her adverse holding descended to her heirs. *32 Miss., 125; 13 Pa. St., 639; 11 Grat., 172; 18 Cal., 458; 22 Vt., 484; 37 ib., 219; 19 Cal., 87.* She and her heirs having been in possession more than seven years, under color of title, her title became good.

*John Fletcher,* for appellee.

The deed from Rector to Powers, and from Powers to Celine Rector, were fraudulent and void as against Edgerton, a prior creditor and subsequent purchaser. *1 Conn., 525; 25 Fed. Rep., 393; ib., 83; 46 Ark., 550; Wait Fr. Conv., secs. 300–1–8.*

The description of the property is clearly insufficient. *41 Ark., 495; 30 ib., 640; 34 ib., 534; 3 Washb. Real Prop., 14th Ed., 398-9, notes 1 and 2, p. 399.*

The deeds were voluntary and cannot be reformed. *15 Ark., 519.*

Edgerton was an innocent purchaser. *40 Am. Dec., 389; 1 Jones on Real Mortg., sec. 459; 27 Ark., 407; ib., 560.*

SMITH, J. In the year 1872 Edgerton sold to William H. Rector and Henry Powers a block of ground in Capital Hill extension to the city of Little Rock for $1750; of which sum $550 were paid down, and for the residue the notes of the purchasers were taken. In 1874, shortly before the maturity of the last of these purchase notes, Rector conveyed his other lands to Powers; and Powers on the same day reconveyed to Rector's wife, Celine. The consideration expressed in the two deeds is respectively $1000 and $1200; but no money was in fact paid, nor any other thing of value delivered or agreed to be paid or delivered. So that the transaction is transparently a voluntary settlement by Rector upon his wife.

In 1876 Edgerton obtained a decree in the proper court against Rector and Powers for $1528, and for the enforcement of his lien as vendor on the block sold them. Under this decree the property was sold for $100.

In 1878 Celine Rector died childless, her heirs being her mother and her brothers and sisters.

In 1881 Edgerton caused execution to be issued for the balance due on his decree, and it was levied upon one of the tracts which had been conveyed to Celine Rector. Edgerton and Rector then agreed to compromise the indebtedness at $500, for which sum Rector executed his notes, and secured the same by a mortgage upon the tract so levied upon. Edgerton seems to have been ignorant of

the previous conveyances to Powers and to Celine Rector; but this is immaterial, if he was chargeable with constructive notice by their registry. The conveyances had been in fact duly acknowledged and admitted to record in the proper office shortly after their execution. In those deeds the land is described as "Three-fourths of the south part of the northwest quarter of section 30, township 1 south, range 10 west," containing forty-four and 31-100 acres. The correct technical description is: "Undivided three-fourths interest in and to the south half of the northwest quarter of section 30, township 1 south, range 10 west." And the land is so described in the mortgage.

Edgerton now exhibited his bill against Rector and the heirs at law of his deceased wife (Powers being out of the jurisdiction) to set aside these conveyances as fraudulent against him, a pre-existing creditor and a subsequent purchaser, and also to foreclose his mortgage. Rector made no defense; but the other defendants allege that the conveyances were made in good faith and upon a valuable consideration. They deny Rector's insolvency at the date of the transfer, or that he owed the plaintiff any debt, having, as they say, been imposed on and deceived by the plaintiff as to the present and prospective value of the block, whereby it was sold at a grossly exorbitant figure. They further deny that Rector had any estate in the land, or power to incumber it, at the time the mortgage was executed. And they assert that the land described in the mortgage is the same tract that was intended to be conveyed to Celine Rector; that the description of it in the deeds under which they claim, follows the description contained in Rector's title papers; and that if there is any inaccuracy, it was the mistake of the draftsman, there being no uncertainty about the tract that was meant, and Rector owning no other lands in that section. But they aver that

the description is sufficiently certain to ascertain and identify the land. Their answer was made a cross-bill, in which it was prayed that the deeds might be reformed, if the description was found to be inadequate. The court sustained a demurrer to so much of the answer and cross-bill as sought to reopen the question of Rector's indebtedness to Edgerton, holding that matter concluded by the judgment that Edgerton had recovered in the former suit. And the plaintiff answered the other allegations of the cross-bill. Depositions were taken and at the hearing a decree was entered, declaring the mortgage a lien superior to the rights of the defendants and ordering its foreclosure.

It is irregular, and according to some authorities fruitless, to litigate in a foreclosure suit an adverse claim which is paramount to the title of the mortgagor. There is no privity between such an adverse claimant and the mortgagee. *2 Jones on Mortgages, sec. 1440*, and cases cited; *Wiltsie on Mortgage Foreclosures, secs. 118–9; Dial v. Reynolds, 96 U. S., 340; Peters v. Bowman, 98 ib., 56.*

1. MORTGAGE: Foreclosure: Parties, etc.

Section 4940 of Mansfield's Digest authorizes any person to be made a defendant "who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination and settlement of the questions involved in the action." But the holder of an adverse title, prior to the mortgage, is a stranger. His interest is not opposed to a recovery of judgment by the plaintiff, as he is not affected by it. Nor is his presence necessary to a complete determination of the question of foreclosure; for his rights were not acquired subsequent to the giving of the mortgage. He is therefore neither a necessary nor a proper party; and disputes involving his title should be settled by an action of ejectment or other appropriate action, apart from the fore-

closure. *Pomeroy on Remedies, sec. 333 et seq.* But the defect is only a misjoinder of causes of action and of parties, and does not go to the jurisdiction of the court. The remedy is by motion to strike out of the bill the names of the parties and the cause of action improperly joined; and the objection is waived unless made. *Mansf. Dig., secs. 5016–17; Crawford v. Fuller, 28 Ark., 370; Terry v. Rosell, 32 ib., 478; Clements v. Lumpkin, 34 ib., 598; Oliphint v. Mansfield, 36 ib., 191; Riley v. Norman, 39 ib., 158.*

In this case the defendants have interposed no objection, here or below, to the litigation of their title.

2. FRAUDU-
LENT CON-
VEYANCE:
Post-nup-
tial settle-
ment on
wife.

We entertain no doubt of the fraudulent character of the conveyances under which the appellants hold. They were without any consideration deemed valuable in law, and were in legal effect a voluntary post-nuptial settlement upon the wife. This is enough to stamp them as presumptively fraudulent against existing creditors, and to cast upon those who claimed title under them, the *onus* of proving the entire good faith of the transaction and that the gift was a reasonable provision for the wife, comprehending but a small portion of the debtor's estate, and leaving ample funds unincumbered for the satisfaction of his creditors. But the proofs show that Rector thereby stripped himself of all, or very nearly all, of his property that was subject to execution. *Wait on Fraudulent Conveyances, secs. 93, 94, 307, 308; Leach v. Fowler's Devisees, 22 Ark., 143; Bertrand v. Elder, 23 ib., 494; Kehn v. Smith, 20 Wall, 35; Salmon v. Bennett, 1 Conn., 525; S. C., 1 Amer. Lead. Cas., 32.*

3. SAME:
Same.

There is another view that may be taken. *Section 3374 of Mansfield's Digest,* which is a re-enactment of the statute of *27 Elizabeth, C. 4,* as well as that of *13 Elizabeth, C. 5,* avoids covinous transfers against subsequent purchasers, as well as creditors. Now, a mortgagee is a purchaser

within the meaning of this statute. And according to the English authorities, which were followed in *Cathcart v. Robinson, 5 Peters, 263 (per Marshall, C. J.)*, a voluntary settlement by a husband upon his wife of the whole of his property is absolutely void against a subsequent purchaser, even though he had notice. The weight of American authority seems to be against this proposition. But the conveyance is certainly void against a subsequent *bona fide* purchaser without notice. *1 Amer. Lead. Cas.. 5th Ed. (\*47)*, note to the case of *Sexton v. Wheaton.* Then the inquiry arises: Was Edgerton affected with notice by the recording of the deeds? According to the previous decisions of this court, the description of the land is so vague and indefinite as to be void for uncertainty. No boundaries are given and no land marks, natural or artificial, are mentioned. A surveyor could find the northwest quarter of section 30, township 1 south, range 10 west, without difficulty. But he would not know where to begin to lay off forty-four acres in the south part of that quarter. *Mooney v. Cooledge, 30 Ark., 640; Jacks v. Chaffin, 34 ib., 534; Freed v. Brown, 41 ib., 495.*

The deeds, being voluntary, could not be reformed so as to affect Edgerton. *Dyer v. Bean, 15 Ark., 519.*

Decree affirmed.