STRICKLIN *v.* MOORE.

Opinion delivered December 9, 1912.

1. ADVERSE POSSESSION.—S, the owner of lands, deeded them to M, his wife, in 1879. On March 23, 1880, said M conveyed the lands to L, and on April 1, 1880, L executed to M a bond for title to the lands taking her notes for the purhase money. M never asserted any claim to the lands and never took possession of them, nor did she pay the notes, but died in 1881, but S did remain in continuous possession of the lands up to 1895, exercising exclusive ownership and control over the said lands. In 1895, defendant having recovered judgment against S, purchased the said lands at execution sale. In a suit by the heirs of M against defendant for possession of the lands, *Held.* By the deed from S and M to L, L acquired both the legal and equitable title; that M never having gone into possession of the lands had no title to the same; that S's possession was adverse to L giving him a title by adverse possession; that S did not hold

title as tenant by the curtesy after the death of his wife M; and that defendant acquired a good title as against the heirs of M by his purchase under execution, had on a judgment against S. (Page 19.)

2. ADVERSE POSSESSION—INSTRUCTIONS—PEREMPTORY FOR DEFENDANT.— Where plaintiffs rely upon the possession of M of certain lands, and there is no evidence that M was in possession of the land except the testimony of one of the plaintiffs that, "I guess she was in possession of it," there is no substantial evidence to support a verdict in plaintiff's favor, and a peremptory instruction to find for the defendant is proper. (Page 20.)

Appeal from Lafayette Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*Mann & Josephs,* for appellants.

1. Though the deed from Wm. N. Stricklin to Mary D. Stricklin conveyed to her but the equitable title which descended to appellants at her death as her heirs at law, subject to the life estate of their father, yet at his death his bare legal title vested in appellants as her heirs, and was merged with their equitable title. 60 Ark. 70.

The adverse possession of Mary D. Stricklin from the date of the deed until her death, continued thereafter uninterrupted for a period of fourteen years by the possession of Wm. N. Stricklin as life tenant, constituted *prima facie* evidence of title in appellants by adverse possession. 98 Ark. 30; 33 Ark. 150; 65 Ark. 422; 31 Ark. 334; 21 Ark. 62; 40 Ark. 108; 62 Ark. 51; 64 Ark. 100; 15 Cyc. 38; 39 N. E. (Ill.) 980.

2. There is no adverse possession as against appellants either by appellee or by Wm. N. Stricklin. The latter could not assert adverse possession against his wife. 2 Enc. of L. & P. 496; 61 Ark. 527. Neither he nor appellee could acquire any right by adverse possession against appellants as reversioners until the expiration of the life estate. 60 Ark. 70; 98 Ark. 30.

3. Under the facts in the case appellee can not set up title in a third person. The actual possession of Mrs. Stricklin was not interrupted by the LeMay transaction. Her husband during her lifetime managed the farm as her agent, and after her death he held possession as tenant by the curtesy. Whether the wife, under whom he held possession, actually owned the land at the time or not, both he and the appellee who holds under him, would be estopped from disputing

appellant's title or asserting title in a third person without first surrendering possession. 10 Am. & Eng. Enc. of L. (2 ed.), 491; 77 Am. Dec. (Miss.) 646; 6 N. W. (Mich.) 868; 4 Johns. 202; 4 Am. Dec. (N. Y.) 262. Stricklin's declarations while in possession that the lands belonged to his deceased wife and to appellants as reversioners, are original evidence of ownership of the lands and character of his possession and binding on appellee as purchaser at execution sale. 10 S. E. (Va.) 974; 96 Ark. 190; 87 Ark. 496; 96 Ark. 171.

*Henry Moore* and *Henry Moore Jr.*, for appellee.

1. The rule that in ejectment the plaintiff must recover upon the strength of his own title needs no citation of authorities. It was recognized on the former appeal. 98 Ark. 33. Plaintiffs could not maintain ejectment under the equitable title Mary D. Stricklin received from her husband, even if she had not deeded to LeMay. *Id.* and cases there cited.

2. The record title both legal and equitable is in LeMay, by virtue of Mrs. Stricklin's deed to him of March 23, 1880, and any adverse possession on her part could only start from the date of that deed, and of necessity ceased at her death; but even had she lived she could not have obtained title by adverse possession as against LeMay, in the face of his bond for title.

The proof is uncontradicted that the notes called for by the bond for title were never paid. Therefore, plaintiffs, while holding under the LeMay bond for title can not plead the statute of limitations or adverse possession against that title. 71 Ark. 167; 76 Ark. 408; 60 Ark. 39.

3. There was no such seizin by record title or by possession for the statutory period in Mrs. Stricklin as to create a tenancy by the curtesy in W. N. Stricklin. The latter had acquired title in the lands by adverse possession for more than the statutory period as against LeMay, prior to the date of the execution sale; and again appellee's adverse possession, making improvements and exercising acts of ownership generally over the land continuously under the execution deed is sufficient to fix the title in him by adverse possession even if there had been any defect in his title under the said deed.

HART, J.   This is an action of ejectment by Bryant L. Stricklin, W. W. Stricklin and Fuller Stricklin against Henry Moore for one hundred and sixty acres of land.   On the former appeal the judgment was reversed because the circuit court erred in sustaining a demurrer to the complaint.   Reference is made to the opinion on the former appeal for an extended statement of the issues.   See *Stricklin* v. *Moore,* 98 Ark. 30. Upon the remand of the case the defendant filed an answer in which he denied both the title and the right of possession of plaintiffs and also pleads an investiture of title in himself by adverse possession for more than seven years.   At the conclusion of the testimony the court directed a verdict for the defendant and the plaintiffs have appealed.   The facts are as follows:

Wm. N. Stricklin became the owner of the lands in controversy, together with other lands referred to in the testimony, some time about 1834.   The lands in controversy were mortgaged by Wm. N. Stricklin to the Real Estate Bank of Arkansas and upon the foreclosure of this mortgage the property became the property of the State, but the State issued to Wm. N. Stricklin its certificate, dated July 14, 1877, showing that he had a right to purchase the land.   On February 24, 1879, W. N. Stricklin executed a deed to the lands in question together with other lands to Mary D. Stricklin, his wife. On the 23d day of March, 1880, Wm. N. Stricklin and Mary D. Stricklin conveyed said lands to Sam B. LeMay, a nephew of the said Wm. N. Stricklin, and on the same day Wm. N. Stricklin assigned to said Sam B. LeMay the certificate which he had received from the State of Arkansas.   On April 1, 1880, the State issued to LeMay its patent to the land.   LeMay then on the same day executed to Mary D. Stricklin a bond for title to said lands and took her notes for the purchase money.

On the 17th day of August, 1881, the said Mary D. Stricklin died intestate leaving the plaintiffs as her sole heirs at law. On October 4, 1880, the administrator of the estate of Wiley P. Cryer, deceased, recovered judgment against Wm. N. Stricklin for the sum of $2,320.11.   A suit was then instituted to set aside the deed to LeMay as a fraud upon the creditors of Wm. N. Stricklin.   On December 16, 1885, the deposition of Wm. N. Stricklin was taken in said cause.   Wm. N. Stricklin

died in 1908 and his deposition was read at the trial of the present case. He testified that he had been in possession of the lands in controversy from 1834 up to the present time (1885) and that the lands during all that time had never been out of his possession; that the lands were deeded to Sam. B. LeMay to assist him in defrauding his creditors, and that LeMay had never asserted any title to the land, and did not expect his wife to pay for the land when he executed the bond for title to her; that LeMay knew his wife had no property of her own and never expected to pay for the lands.

The suit by the administrator of Wiley P. Cryer, deceased, was never prosecuted to judgment but was finally dismissed for want of prosecution. Some effort was made by the administrator of the estate of Sam B. LeMay to collect the notes given him by Mary D. Stricklin, but it does not appear that they were ever collected, or that any suit looking to that end was ever prosecuted to judgment.

The defendant, Henry Moore, recovered judgment against Wm. N. Stricklin and Bryant L. Stricklin and levied on about seven or eight hundred acres of land, including the lands in controversy, to satisfy said judgment. Moore became the purchaser of all of said lands at the execution sale and on May 2, 1895, after the expiration of the year for redemption had expired, received a deed to said lands. Moore then conveyed all of the lands so purchased by him at the execution sale, except the land in controversy, to the plaintiffs in the present suit.

Moore testified that at the time he made the conveyance to them it was understood between him and the plaintiffs that he was to retain the title to the lands in controversy. The plaintiffs admitted the purchase of the other lands from him, but denied that they agreed that the defendant should retain the one hundred and sixty acres in controversy for himself.

The defendant after his purchase at execution sale went into possession of the one hundred and sixty acres involved in this suit and has held possession ever since, making improvements upon the lands and renting them to some of the plaintiffs and to other persons.

In the opinion on the former appeal, which is the law of the case, the court, in discussing the deed from Wm. N. Stricklin

to his wife, said that an equitable title is not sufficient to maintain ejectment unless there is a legal right to possession, but counsel for plaintiffs say that they rely on a title by adverse possession in the said Mary D. Stricklin to recover.

On the former appeal the court said: "The allegations of the complaint are that Mary D. Stricklin held the land adversely from the date of her deed in 1879 up to her death in August, 1880, and that her husband, W. N. Stricklin, held adversely as tenant by the curtesy from then until defendant became the purchaser of his title at the execution sale in 1895. The adverse possession of W. N. Stricklin as such tenant by the curtesy, coupled with the adverse possession of his wife, constituted an investiture of title in the heirs of Mary D. Stricklin, subject to the life tenancy of W. N. Stricklin."

It will be noted, however, that the question before the court then was whether the demurrer to the complaint should have been sustained and the allegations of the complaint were considered as proved. Upon the proof, as shown by the record on the present appeal, it is not established that Mary D. Stricklin was ever in possession of the land. On the contrary, the undisputed proof shows that Wm. N. Stricklin entered into the possession of the lands in 1834 and remained in possession of them until the date of the execution sale to the defendant, Moore, in 1895. During this long period he was in open, notorious possession, taking the rents and exercising every act of ownership. The conveyance by him to his wife was merely colorable. It will be remembered that the conveyance was made in 1879 and that his wife died in August, 1881. At the date of the conveyance to her she did not reside on the lands but resided on their homestead in the town of Lewisville. She continued to reside there until her death. It does not appear that she ever exercised any act of ownership whatever over the lands. In March, 1880, W. N. Stricklin and Mary D. Stricklin, his wife, executed a deed to Sam B. LeMay to said lands, and W. N. Stricklin also transferred to him the certificate of the State, and on April 1, 1880, the State issued its patent to LeMay. So LeMay became invested with both the legal and equitable title, and the adverse possession of Stricklin was in hostility to his title.

Plaintiffs claim that the testimony of B. L. Stricklin shows that Mrs. Stricklin was in possession of the land after the deed was made to her. The witness was asked, who was in possession of the land after this deed was made, and answered, "The part of it that was deeded to mother, I guess she was in possession of it." This was merely a conclusion of the witness and was not a statement of any substantial fact. Bryant L. Stricklin also testified that his father claimed to him the land was his wife's. He said that this was during his mother's lifetime and after her death his father also spoke of it as belonging to his mother. On cross examination he stated that his father was in the possession of the land at the time he made the deed to his wife, and that his mother at that time was living on the homestead at Lewisville, and continued to live there until her death. He further stated that his father controlled the land and continued in the possession of it.

W. W. Stricklin, another one of the plaintiffs, testified that his father was in possession of the land when the deed was made to his wife and that he continued to hold possession of it until the defendant, Moore, took possession.

We are of the opinion that the undisputed testimony shows that there was never any visible change in the possession of the land and that there is no substantial testimony from which it can be inferred that Mrs. Stricklin ever entered into possession of the land at any time. This being true, the continued possession of the land after her death by Wm. N. Stricklin would not constitute adverse possession by him as tenant by curtesy, but such adverse possession by him being continued for the statutory period created an investiture of title in himself; that is to say, we are of the opinion that the undisputed testimony shows that Mrs. Stricklin never asserted any claim whatever to the land and never took possession of it. On the other hand, Wm. N. Stricklin remained in possession of the land after the deed was made just as he had before and continued to control and exercise the exclusive ownership over it until it was sold to the defendant, Moore, at the execution sale in 1895. This gave him a title by adverse possession against LeMay, to whom the legal title was conveyed in 1880.

It follows that the judgment must be affirmed.

ON REHEARING.

HART, J.   In testing the allegations of the complaint on demurrer on the former appeal the court said that the adverse possession of W. N. Stricklin as tenant by the curtesy, coupled with the adverse possession of his wife, would constitute an investiture of title in the heirs of Mary D. Stricklin, subject to the life-tenancy of W. N. Stricklin.   The reason is that the estate by curtesy is a mere continuation of the wife's estate and is in the nature of an estate by descent rather than by purchase.   According to the allegations of the complaint, W. N. Stricklin's possession was capable of being referred to a claim of right by curtesy, it having been alleged in the complaint that his wife died in the possession of the lands. It then became a question whether the character of her previous possession which had not run for the statutory period could be continued by him.   We held, under the allegations of the complaint, that his adverse possession could be tacked to the previous possession of his wife and that, if the possession was continued for the statutory period, it would create an investiture of title in her heirs subject to the life estate of W. N. Stricklin.

It is well settled that adverse possession must be continuous, and its continuity must be in the same right.   Therefore, it was necessary for appellants in this case to show that Mrs. Stricklin was in possession of the land at the time of her death, as well as to show that the possession of W. N. Stricklin after her death was continued in her right.   We did not hold as counsel for appellants seem to think we did, that a husband can not act as agent for his wife and can not take charge of and manage her real estate.   We did hold, however, that there was no testimony in the case that would have warranted a jury in finding that W. N. Stricklin was in possession of the lands prior to the death of his wife as her agent, or that he was holding the land for her.   On the contrary, we held that the undisputed evidence showed that W. N. Stricklin held possession of the land in his own right prior to the death of his wife, and that, therefore, there could be no previous possession of the wife to which his possession after her death could be tacked so as to continue the adverse possession in her right. As we said, the testimony of B. L. Stricklin amounted to no

more than a conclusion on his part that his mother was in the possession of the land prior to her death, for he did not testify to any fact or circumstance from which it might be inferred that she was in possession of the land, but only stated his conclusion on the matter. B. L. Stricklin testified that after his mother died his father told him that the land belonged to Mary D. Stricklin, his wife, and that he was holding the land for her children. This statement being made after the death of Mary D. Stricklin is not sufficient to show that she had possession of the land prior to her death.

The declarations of W. N. Stricklin made after the death of his wife as to her ownership of the land are not sufficient to show that she was in possession of the land previous to her death. To so hold would be to adopt the rule that a scintilla of evidence is sufficient to send the case to the jury and this, the court has never done. On the contrary, the court has uniformly held that where there is no substantial evidence to support a verdict for the plaintiff, it is the duty of the trial court to so declare the law.

The petition for a rehearing will be denied.