## EVANS *v.* RUSS.

### Opinion delivered November 12, 1917.

1. DEEDS—INVALID DESCRIPTION.—A deed containing the following description, *held* void: "North part of south half of southeast quarter, 20 acres, and south part south half north half of southeast quarter of southeast quarter of section 3, 4 N., 9 W., 32 acres."

2. DEEDS—DEFECTIVE DESCRIPTION—NOTICE TO THIRD PARTIES.—The description of land is a necessary part of the deed; if the description is so indefinite that the land can not be identified, the deed will not furnish the constructive notice necessary to charge innocent purchasers, and will be void as to them.

3. DEEDS—VOID DESCRIPTION—ADVERSE POSSESSION.—One H. undertook to deed certain land, upon which he was residing with his wife, to his wife. The deed was invalid. H.'s wife then died, and H. deeded the land to one T. *Held,* under the testimony that H.'s wife acquired no interest in the land by deed, adverse possession or otherwise, which could defeat T.'s claim.

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Richard M. Mann,* for appellants.

1. Appellants were entitled to a reformation of the deed. 102 Ark. 83; 142 S. W. 595. They are not barred by laches. 98 Ark. 23; 135 S. W. 453.

2. They are entitled to recover by adverse possession begun by their mother and continued after her death by her husband, their father by his curtesy estate. 98 Ark. 30; 38 Miss. 359; 194 S. W. 19. They are not barred being under coverture. Kirby's Digest, § 5056; 35 Ark. 84.

3. They are not barred by laches. 84 Ark. 19; 115 S. W. 931; 67 Ark. 320; 94 *Id.* 122; 108 *Id.* 248; 70 *Id.* 371.

4. Nor are they estopped. 62 Ark. 316; 100 *Id.* 399. Appellee is not an innocent purchaser. The deeds were recorded and he had notice.

*Trimble & Williams,* for appellee.

1. The deed to Mrs. Harkins was void for uncertainty of description. It is too vague and indefinite and is not notice to a subsequent purchaser. 48 Ark. 419; 42 *Id.* 362; 95 *Id.* 255.

2. Appellee is an innocent purchaser for value and without notice. 34 Cyc. 956.

3. Appellant's claim is stale. 103 Ark. 499; 60 *Id.* 55; 61 *Id.* 589; 72 *Id.* 456; 55 *Id.* 96; 168 U. S. 685; 64 Ark. 345.

4. Appellants are estopped. Laches are pleaded. 70 Ark. 374. They also fail to show adverse possession at all. They ratified the sale by accepting part of the purchase money and are barred. 106 Ark. 14.

### STATEMENT OF FACTS.

On March 14, 1914, Kate Evans and Annie Mayhan instituted an action of ejectment against Robert Russ, Jr., to recover possession of 52 acres of land in Lonoke County, Arkansas. After the suit was instituted in the circuit court the plaintiffs discovered that the description of the land in the deeds under which they claim title was erroneous. They filed an amended complaint set-

ting up this fact and asking for a reformation of their deed and that the case be transferred to the chancery court. The transfer to the chancery court was made and plaintiffs again amended their complaint and set up an additional ground for recovery. They set up that they had acquired title to the land by adverse possession and asked for a recovery of the land on that ground. No objection was made to the transfer of the case to the chancery court or the subsequent amendment to the complaint of the plaintiffs. The facts are as follows:

The land in question was originally owned by Elizabeth A. Harkins. On November 23, 1882, she conveyed the land by quit-claim deed to her son, Geo. W. Harkins. He at once took possession of the land and made it his homestead. On December 13, 1886, Geo. W. Harkins conveyed by warranty deed to S. A. Harkins, his wife, for the consideration of $350 named in the deed the following described lands:

"North part of south half of southeast quarter of southeast quarter, 20 acres, and south part south half north half of southeast quarter of southeast quarter of Section 3, 4 N., 9 W., 32 acres."

It was the intention of Geo. W. Harkins to convey the land in controversy by this deed. He resided on the land as his homestead at the time he made the deed to his wife. After he executed the deed to his wife he and his wife continued to live on the land as before until March 8, 1889, when his wife died. After her death he continued to reside on the land until October 3, 1901. On that date he conveyed the land to J. L. Tillman by warranty deed for a consideration of $700. Tillman then moved on the land and took possession of it and G. W. Harkins moved off of it. On March 5, 1905, Tillman conveyed the land by warranty deed to Nathan Russ for a valuable consideration. In 1912 Nathan Russ for a valuable consideration conveyed the land to his brother Robert L. Russ, Jr., the defendant in this action.

Kate Evans was a daughter of G. W. Harkins and S. A. Harkins. She was thirty-five years of age at the

time her deposition in this case was taken and has been a married woman since October 20, 1895. Annie Mayhan was also a daughter of G. W. Harkins and S. A. Harkins and has been a married woman since September 2, 1903. G. W. Harkins married again after his wife, S. A. Harkins, died. After he sold the land to Tillman he gave each of the plaintiffs in this suit $100 out of the proceeds of the sale. He at the time had children by his second wife but did not then or at any time thereafter give them any part of the money. He died on January 8, 1906, and his second wife survived him and is now alive. Other facts will be referred to in the opinion.

The chancellor found in favor of the defendant and the plaintiffs have appealed.

HART, J., (after stating the facts). (1) It is conceded that the description under which G. W. Harkins attempted to convey the land in question to his wife, S. A. Harkins, was so indefinite as to render it void under the rule laid down by the decisions of this court. *Smith* v. *Smith,* 80 Ark. 458; *Adams* v. *Edgerton,* 48 Ark. 419; *Colonial & U. S. Mtg. Co.* v. *Lee,* 95 Ark. 253.

Counsel for the plaintiffs, however, claim title by adverse possession under the authority of *Stricklin* v. *Moore,* 98 Ark. 30. In that case the allegations of the complaint were that the wife held the land adversely from the date of the deed to her by her husband until her death and that her husband held adversely as tenant by the curtesy from then until the land was purchased at execution sale against him.

The demurrer admitted the allegations of the complaint. The court held that adverse possession of the husband as tenant by the curtesy coupled with the adverse possession of his wife before her death would constitute an investiture of title in the heirs of the wife subject to the life estate of the husband. The reason was that the estate by the curtesy is a mere continuance of the wife's estate and is in the nature of an estate by descent rather than by purchase. We held that under the alle-

gations of the complaint that his adverse possession could be tacked to the possession of his wife and that if the possession was continued for the statutory period it would invest title in the heirs of the wife subject to the life estate of the husband. This was fully explained on the second appeal of the case. *Stricklin* v. *Moore*, 106 Ark. 14. On that appeal the facts had been developed and we held that the evidence was not sufficient to show that the wife held the land adversely prior to the death of the husband. We are of the same opinion as to the facts of this case. On this point we quote from the testimony of Mrs. Kate Evans as follows:

"Q. Well did your father occupy this place as a homestead when he deeded it to your mother?

A. Yes, sir.

Q. Did she live there afterwards?

A. She did.

Q. About how long?

A. About ten years to the best of my knowledge.

Q. Did she die there?

A. She did.

Q. When did she die?

A. She died on the 8th day of March, 1889."

On cross-examination Mrs. Evans admitted that she was too young to remember anything about what was said at the time her father executed the deed to her mother. Mrs. Annie Mayhan testified that her father acquired title to this property by deed from his mother and that it became his homestead; that he then deeded it to her mother in consideration of certain property of hers which he had used. We quote from her testimony as follows:

"Q. How long did your mother occupy it and hold possession after this deed?

A. I have forgotten. I had the date of her death but I lost it. Sister Kate has it.

Q. She occupied it how long?

A. I don't remember.

Q. Did she occupy it until she died?

A. Yes, sir; never was off the place—never lived anywhere else.

Q. You don't know about how many years?

A. No, sir.''

(2-3) The testimony on the part of the defendant shows that Tillman did not have any knowledge of the claim of Mrs. S. A. Harkins when he bought the land from her husband, G. W. Harkins. He paid a valuable consideration for the land and immediately went into possession of it. He and his successors in title have been in possession of it ever since. G. W. Harkins remained in possession of the land from the time his mother made him a deed to it until he sold the land to Tillman. It is true his wife lived on the land with him until her death but the record does not disclose that there was ever any visible change in the possession of the land. It is not shown that Mrs. Harkins ever exercised any acts of ownership over it. It will be noticed that the testimony on this point on the part of the plaintiffs, which we have copied above, does not amount to a statement that she held the land adversely after the deed received by her from her husband. The questions and answers seem to be only the conclusion of the plaintiffs and of their attorneys. It does not amount to a statement of fact by the plaintiffs that their mother took possession of the land after her husband executed the deed to her and held it adversely to him. In this respect the record is very similar to that on the second appeal in the case of *Stricklin* v. *Moore,* referred to above. We there held that the record did not show any visible change in the possession of the land and that the continued possession of the land after her death would not constitute adverse possession by him as tenant by the curtesy. So here the record title to the land was in G. W. Harkins and the title to it was not wrested from him by adverse possession. The record title being in him and the possession not having been wrested from him by his wife, his continued possession after her death will be deemed to be under the record title. As we have already seen Till-

man did not have any actual notice of the claim of Mrs. Harkins to the land. It is true that her deed was placed of record but on account of the defective description, it did not constitute constructive notice to Tillman of her claim of title. The description of land in a deed is an essential part of it. If the description is so indefinite that the land cannot be identified the deed will not furnish the constructive notice necessary to charge innocent purchasers, and will be void as to them. *Neas v. Whitener-London Realty Co.*, 119 Ark. 301, and *Adams v. Edgerton*, 48 Ark. 419.

It follows that the decree must be affirmed.