Mr. Justice Duval
 

 delivered the opinion of the Court. — -
 

 This case is brought up, by appeal, from the Circuit Court lor the district of Columbia and county of Washington, sitting in equity.
 

 The appellee, who was complainant, in the Court below, filed his bill in equity, in the year 1822, in the Circuit Court, against Daniel Rhea, and Elizabeth his wife, and William Er-skine, an infant son of said Elizabeth. The bill alleges, that Elizabeth Rhea, formerly Erskine, was indebted to the complainant in the sum of 300 dollars, for goods sold and delivered; — that being pressed for payment, she, with the defendant, Rhea, with whom she then lived, agreed, that if allowed further time, they would secure the debt, by conveying to Rhenner a lot of ground, No, 165, in Beatty & Hawkins’s addition to Georgetown; which was the property of said Elizabeth, and which had been conveyed to her, by the name of Elizabeth Erskine.
 

 That Rhea, together with the said Elizabeth, By their deed,
 
 *107
 
 bearing date May 13th.'1819, conveyed to the-complainant the lot of ground before mentioned, for the purpose of securing the debt, with interest; and stipulated, that, if the debt was not paid in two years, it should be held in trust, with power to sell the same, and apply the proceeds, &c.
 

 The bill further states, that the said Daniel and Elizabeth, a few days before the date of the deed to the complainant,-.viz: on the tenth of May 1819, but after the agreement to convey to the complainant, fradulently conveyed the same premises to the defendant, Erskine, an infant son of said Elizabeth, in fee, in consideration of natural love apd affection;- — that he, the said Rhenner, had, at a considerable-expense, at the request, and with the knowledge and approbation of the defendants, erected improvements on the lot, and put a tenant in possession of the same; but that the defendant, by collusion, soon after obtained possession of the same, and still keep it, claiming to hold it under the deed to the infant. The bill concludes withn praying, that the deed to William Erskine may be declared void, and that the property may be sold to pay his claim, 8cc.
 

 The defendant, Daniel Rhea, in his answer, admits, that his wife, before his intermarriage with her, viz: in May 1819, was the wife of one Robert Erskine, and was engaged'in carrying on business for herself; — that he did agree to join, and did join her, in the conveyance to the complainant, and in that to her son; — that he had no title or interest in the premises; — that the property belonged, in May 1819, to Elizabeth Erskine, who was a married woman; and he denies all the other allegations in the bill.
 

 Elizabeth Rhea, in her answer, avers, that she" was married to Robert Erskine in January 1812; — that after her marriage, in the absence of her husband, one Adam Mayne conveyed to her the premises mentioned in the-bill of complaint; the deed bears date on the 7th of April 1817; — that her husband, Erskine, left her in the year.1814, and she believed he was alive in May-1819; and that she was not, at that time, the wife of Daniel Rhea ; — that in July 1821, Erskine having then been beyond seas more than seven .years, she married Daniel Rhea; having received no support from her former husband, since he left' her.
 

 . The answer of the infant is put in by his guardian, in the ■usual form, submitting to the protection of the Court; without, admitting or denying any of the facts alleged in the bill.
 

 In this state of the proceedings, the Court decreed a sale of the lot before mentioned, for payment of the claim of the complainant'; and appointed a trustee to make the sale, under the' terms prescribed in the decree; reserving, the claim of tlie com plainant. for proof on it, and further order. From this decree.
 
 *108
 
 there was an appeal, and the cause is now before this Court for their decision. The question submitted by the arguments of the counsel is, whether the contracts and engagements of Elizabeth Rhea, made in the absence of her _first husband, and-prior to her marriage with the defendant, Rhea, are obligatory; and to what extent a woman who has been abandoned by her husband, may contract debts, for which she is- personally liable.
 

 The law seems to be settled, that, when the wife is left without maintenance or support, by the husband, has traded as a
 
 feme sole,
 
 and has obtained credit as such, she ought to be liable for her debts. And the law is the same, whether the husband is banished for his crimes, or has voluntarily abandoned the wife. It is for the benefit of the
 
 feme covert,
 
 that she should be answerable for her debts, and liable to an action in such a case; otherwise she could not obtain credit, and -would have no means of gaining a livelihood. A decision to this effect, by the Court of Common Pleas, in England, is reported in 1 Bos.
 
 & Pull.
 
 359. In delivering- the opinions of the Court, Mr. Justice Buller refers to the case of Lady Belknap, whose husband was exiled. She was permitted to sue in her own name. The husband of Lady Sandys, was banished by Act of Parliament during life; and it was decreed, in her case, that she might, in all things, act as a
 
 feme sole,
 
 and. as if her husband was dead; and that the necessity of the case required she should have such-power, (1
 
 Vernon,
 
 104.) And the same reason applying, where the husband had abjured the realm, the wife, in that case, was allowed to sue as a widow for her dower. In such case, she has been permitted to alien her land, without her husband, and is-exempted from the disabilities of coverture. It has been uniformly considered,that banishment, or abjuration, is a civil death of the husband. In the case of Deborah Gregory
 
 vs.
 
 Paul, executor of Warburton; reported in the 15th volume of
 
 Mass. Hep.-,
 
 all these cases are reviewed by the Supreme Judicial Court of Massachusetts; and the law recognised. In the case under consideration, there was a voluntary abandonment of the wife, by the husband, without having.furnished her with the means of support. In his absence, she traded and dealt as a
 
 feme sole,
 
 and is liable for her debts. When the deeds for the lot aforementioned was executed, her husband had been absent five years'only; she continued under a coverture, and was the wife of Robert Erskine, her first husband. There is no evidence that she was, at that time, married to Daniel Rhea; and if the marriage had been proved, it would have been illegal and unavailing. A
 
 feme covert,
 
 who has been abandoned by her husband, is not permitted to marry a second time.' with impunity, until her husband shall have been absent seven
 
 *109
 
 years, and shall not have been heard of, during that time. Rut by the laws of Maryland, which must govern in this case, a married woman cannot dispose of real property, without the consent of her husband; nor can she execute a good and valid deed, to pass real estate, unless he shall join her in the deed.
 

 The separate examination, and other solemnities, required by law, are indispensable, and must not be omitted. The deeds executed by her and Daniel Rhea, in May 1819, are, therefore, inoperative and void.
 

 The Circuit Court decreed, in this case, upon the bill annexed and exhibits, without further testimony. They do not, in themselves, contain sufficient matter for a decree.
 

 It does not appear that any evidence was taken on commission, or otherwise, to establish, or disprove, the material alie ■ gations in their bill!
 

 The record being thus defective, this Court cannot make a final decision. The decree of the Circuit is reversed, and the record remanded for further proceedings.