## INHABITANTS OF HIRAM *versus* DANIEL PIERCE.

The statute that requires kindred, by consanguinity, who are of sufficient ability to contribute to the support of paupers, does not embrace within its provisions an *illegitimate* child who has become chargeable as a pauper.

Where a marriage was valid by the laws of Massachusetts, between persons who were living and were married in that State — if, afterwards, they become residents of this State, the marriage will be held valid here. ( *Thus,* if one of the parties was a minor, and married without the consent of his father, the marriage is not therefore void, if regularly made according to the common law, although had in violation of the specific regulation of the statute of that State, prohibiting persons, authorized to solemnize marriages, from marrying minors without the consent of their parents; there being no statute of that State declaring such marriages absolutely void.)

And if, at the time of the marriage, the wife had a former husband living, who, for a period of more than seven years, had entirely deserted her, and had concealed from her his residence, and who, she believed, had long been dead, a marriage under such circumstances is within the exceptions made to the statute of Massachusetts, which declares void any marriage contracted while either party has a former wife or husband living.

It was considered a sufficient allegation that the town had incurred expense, where the complaint set forth that the child had been supported by the complainant town as a pauper, since a certain day therein named.

And such complaint was held to be sufficient, though made and signed by the attorney, in behalf of the town.

THIS is a complaint under the statute, brought by the inhabitants of the town of Hiram, to compel the respondent to

contribute towards the support of his alleged grandchild, who is supported as a pauper by the complainants.

The respondent, in his answer, denies that he is of kindred of the pauper, who, he alleges, has no legal settlement in said town of Hiram, and is not legally chargeable to said town.

The ability of the respondent to contribute was admitted, as was also the necessity for the relief and support of the pauper by the said town.

The case is now presented, on the REPORT of the evidence offered at *Nisi Prius*, HATHAWAY, J., presiding, for the consideration of the full Court, who are to render such judgment, on so much of the evidence as is legally admissible, or give such direction to the case, as the legal rights of the parties may require.

It appears from the evidence reported, that John H. Pierce, a minor son of the respondent, and Fidelia Alden were married in May, 1856, in the State of Massachusetts, where they were then residing; that said John deserted the said Fidelia after they had lived together about one year, and within a short time after the birth of the child which has become chargeable to the complainants.

It further appeared that, in the year 1846, the said Fidelia was married to one Martin Alden, who deserted her in 1849, and who was reputed to be, and, by the said Fidelia, believed to be dead, sometime previous to her marriage to Pierce. There was evidence tending to show that said Alden was living at the time of his wife's marriage to Pierce.

*Howard & Strout* argued for the respondent: —

The pauper in this case is not the grandchild of the defendant, because Fidelia Pierce, or, more correctly, Fidelia Alden, at the date of her marriage to John Pierce, was the lawful wife of one Martin Alden, then living.

Her marriage to Pierce was therefore void. R. S. of 1841, c. 87, § 4; *Fenton* v. *Reed*, 4 Johns. 52; *Rex* v. *Lubbenham*, 4 Term R. 254; *Rex* v. *Albertson*, Salkeld, 484; Cro. Eliz. 858; 1 Salkeld, 121; 4 Black. Com. 164.

The child of a void marriage is *nullius filius*, and cannot have a grandfather. See cases above cited; 2 Kent, pp. 96, 212; *Queen* v. *Pilkington*, 2 Ellis & Black, 546; *Queen* v. *Collingwood*, 12 Ad. & Ell. N. S., 681.

The child is presumed to be the legitimate child of Martin Alden, the husband of Fidelia. 2 Kent, 210, 211; *Pendrell* v. *Pendrell*, Strange, 925; Salkeld, 123; *Rex* v. *Luffoe*, 8 East, 207–8; 1 Blacks. Com. 457; *Marris* v. *Daveis*, 3 Car. & Payne, 206.

"The wife is not an admissible witness to prove that her legal husband has had no access to her. She is rejected on principles of morality. *Contra bonos mores.*" Reeve's Domestic Relations, 272; *Goodright* v. *Moss*, Cowp. 394; L'd Mansfield, Buller's N. P., 112, 113; 1 Greenl. Ev. § 344; *Queen* v. *Mansfield*, 1 Ad. & El. 444; *Rex* v. *Saurtan*, 5 Ad. & El. 181.

The statute relating to bigamy absolves the party from punishment, if, at the time of the second marriage, the former husband or wife had been absent and unheard from for seven years.

The second marriage is void, notwithstanding, if the prior husband or wife proves to have been alive. The statute does not operate as a divorce. See *Fenton* v. *Reed*, and other cases before cited.

If the child is illegitimate, it has the settlement of its mother, which is in Massachusetts. R. S., c. 24, § 1. And, therefore, it has no settlement in Hiram, and may be removed to its place of settlement. R. S., c. 24, § 31.

If so, these complainants cannot recover. *Salem* v. *Andover*, 3 Mass. 436; *Sayward* v. *Alfred*, 5 Mass. 244.

J. H. Pierce, at the time of his marriage, was a minor, and his father or guardian did not consent to his marriage. Pierce has repudiated it since he came of age. R. S. of 1841, c. 87, § 7.

*Hammons,* for complainants.

The opinion of the Court was drawn up by

DAVIS, J.— The testimony in this case proves, with a reasonable degree of certainty, that Fidelia Temple was married to Martin Alden in 1846, and that they cohabited as husband and wife until 1849, having one child; that, in Feb. 1849, he, voluntarily, and without cause, deserted her; that he afterwards contributed nothing for her support, nor gave her any information of his residence, or that he was alive; that, either with or without his procurement, his wife was informed that he was dead, under circumstances that might well have caused her to believe such information to be reliable.

It further appears that said Fidelia Alden, in May, 1856, a little more than seven years after her former husband had deserted her, was married to John H. Pierce, then a minor son of the defendant; that by him she had a son; that said Pierce soon afterwards deserted her, making no provision for the support of herself or her child; that she called on the defendant, as the grandfather of the child, for assistance; that the child, the defendant having refused to provide for it, has since been supported as a pauper by the town of Hiram; and that the defendant is of sufficient ability, and is liable to support the child, if the mother was legally married to John H. Pierce. But the defendant contends that the marriage was void, and that the child is consequently illegitimate.

By the statute, kindred by consanguinity, living within this State, and of sufficient ability, are liable for the support of paupers. R. S., c. 24, § 9. But an illegitimate child, in the eye of the law, is *filius nullius*, and has no kindred by consanguinity. . Such a person, at common law, could have no heirs but of his own body. Co. Litt. 123, a. It is only by express provision of statute that the mother of such a person can inherit his estate. *Cooley* v. *Dewey*, 4 Pick. 93. The reputed father is not recognized, in law, as of kindred blood; and is only liable for the support of the child by special statutes. And such statutes are not to be construed as extending the line of kindred beyond the parties expressly

named. *Curtis* v. *Hewins*, 11 Met. 294. If, therefore, the pauper in this case is an illegitimate child, the defendant is not liable for his support.

And, first, it is said that John H. Pierce was a minor at the time of the marriage, and that his father, the defendant, did not give his consent.

· The parties then lived and were married in Massachusetts. Whether the marriage was valid must be determined by the laws of that State; and, if valid there, it will be held valid here. *West Cambridge* v. *Lexington*, 1 Pick. 506; *Sutton* v. *Warren*, 10 Met. 451.

By the common law, females are competent to enter into the marriage contract at the age of twelve years, and males, at the age of fourteen. But persons authorized by law to solemnize marriages are prohibited by statute, in Massachusetts, from marrying minors without the consent of their parents. This statute, however, has not abrogated the common law rule as to the age at which persons may be lawfully married. It was designed to prevent the improper marriages of minors; but it does not declare that such marriages shall be void. "In the absence of any provision of statute declaring marriages between parties of certain ages absolutely void, all marriages regularly made, according to the common law, are valid and binding, although had in violation of the specific regulations imposed by statute." *Parton* v. *Hervey*, 1 Gray, 119.

It is contended, further, that the marriage was void because the wife had a former husband living at the time. And that Alden, the former husband, was then alive, there can be little doubt.

. But he had deserted his wife more than seven years before; and she testifies that she had not heard from him during that time, except to hear of his death, and that she verily believed that he was dead at the time of her second marriage. Whether these facts made her marriage with Pierce so far valid that her child is to be deemed legitimate, must also be determined by the laws of Massachusetts. By the Revised Statutes of that State, c. 130, any person, having a former

husband or wife living, is prohibited, under certain penalties, from marrying again. The third section excepts from the operation of the statute, "any person whose husband or wife shall have been continually remaining beyond the sea, or shall have voluntarily withdrawn from the other, and remained absent for the space of seven years together, — the party marrying again not knowing the other to be living within that time."

That the case before us is within the first branch of the exception, there can be no doubt. Alden had voluntarily withdrawn from his wife, and had, at the time of her second marriage, been absent more than seven years.

Did she know, or had she reason to suppose, that he was then living? She had heard various rumors of his death; and had been informed by his sister that he was dead. It had probably been his purpose to keep her ignorant of his residence, that he might not be troubled in regard to her support. And he might, for the same reason, have wished her to think that he was dead. If he was living at the time of her second marriage, we do not think that she had any knowledge of that fact. The witnesses who testify that they have seen him, since his desertion and before her marriage, do not state that they communicated the fact to her in any instance; and, for aught that the case shows, she had no reason to suppose that he was living. We therefore think the case is within the exception; and, consequently, that the marriage was not within the statute prohibition.

But it is argued that, though the statute purges the felony in all cases within the exception, it does not make such marriages valid. So it has been held, under a statute somewhat similar. *Fenton* v. *Reed*, 4 Johns. 52. But there are cases in which it is intimated that whatever may be done with impunity can be done legally. *Rhea & al.* v. *Rhenner*, 1 Peters, 105; *Commonwealth* v. *Marsh*, 8 Met. 472.

By the law of Massachusetts, "all marriages contracted while either of the parties has a former wife or husband living, shall be void." R. S., c. 75, § 4. If this were the

only provision, all such marriages would be void, *ab initio*. But, by the statute already cited, all such marriages are excepted from prohibition, when contracted in good faith, after a desertion and absence of the former husband or wife for the space of seven years. And, by another provision, all such marriages may be annulled. And, " when a marriage is dissolved on account of a prior marriage of either party, and it shall appear that the second marriage was contracted in good faith, and with a full belief of the parties that the former wife or husband was dead, the issue of such second marriage, born or begotten before the commencement of the suit, shall be deemed to be the legitimate issue of the parent who was capable of contracting. Mass. R. S., c. 76, § 23.

These provisions of statute are *in pari materia,* and are to be construed together, as explanatory of each other. *Rex* v. *Loxdale,* 1 Burrows, 447. And, applying them to the case before us, whether we hold the marriage of Pierce to have been absolutely void, or only voidable, in either case he was capable of contracting at the time, and the child must be deemed his " legitimate issue."

It is objected that the statute last cited applies only to cases where the marriage has been actually annulled by a court of competent jurisdiction; and that it cannot be invoked in this case, as the marriage has not been dissolved. But such a construction would defeat, to a great extent, the purpose of the statute. It was designed for the benefit of children, who, without it, would be deemed illegitimate. But such children have no power to procure the actual dissolution of the marriage of their parents; and the parents themselves may be unwilling or unable to do it. And we are of the opinion that it was the intention of the Legislature, by force of all the provisions of statute that have been cited, to make all such marriages so far valid, that the parent capable of contracting, and the children, should sustain the same mutual relation to each other as if the marriage had been actually binding and valid; and this, whether the marriage should be afterwards annulled, or not. So that, whenever the relation between

such parents and their children is involved in any suit, the Court having jurisdiction thereof may, for the purposes of such suit, determine the whole question.

The complaint alleges that the child has been supported by the plaintiffs as a pauper since June, 1856, which is a suf-ficient allegation that the town has incurred expense. And, though made and signed by the attorney in behalf of the town, we think it is sufficient.

The testimony reported does not show the amount expend-ed previously, nor the probable cost of supporting the child in future. Judgment must be rendered for the complainants, the amounts to be fixed upon a further hearing.

> *Judgment for plaintiffs. Parties to be heard in damages at Nisi Prius.*

TENNEY, C. J., HATHAWAY, CUTTING, MAY, and GOODENOW, J. J., concurred.