BRIDE *v.* WALKER.

4-7189 176 S. W. 2d 148

Opinion delivered December 13, 1943.

*Henry W. Smith,* for appellant.

*Robert Zebold,* for appellee.

ROBINS, J. This is a contest, involving ownership of a one-acre tract situated at Grady, Lincoln county, Arkansas, between appellants, collateral heirs of William Johnson, deceased, and appellees, collateral heirs of Virginia Johnson, deceased. The land in controversy was conveyed to William Johnson, the husband of Virginia

Johnson, and he never conveyed it to anyone, but it is the contention of appellees that Virginia Johnson, who obtained a divorce from William Johnson, became the owner thereof by virtue of the provisions of the divorce decree and also by adverse possession. The lower court rendered judgment in favor of appellees, to reverse which this appeal is prosecuted.

The case was tried before the lower court sitting as a jury upon the following agreed statement of facts:

"William Johnson and Virginia Johnson were lawfully married prior to 1905 in Lincoln county, Arkansas; on December 22, 1905, William Johnson acquired title from Mrs. Eugenia Wood to the lands described in complaint and being the lands involved in this suit and that he and his wife, Virginia Johnson, occupied it on December 22, 1905, and occupied as homestead.

"That thereafter and prior to December 9, 1916, William Johnson left Lincoln county, Arkansas, and moved to Pittsburgh, Pennsylvania; that he abandoned and deserted his wife, Virginia Johnson, and Virginia Johnson remained in possession of the property; that on December 9, 1916, in a cause of action in the Lincoln chancery court wherein Virginia Johnson was plaintiff and William Johnson was defendant the court rendered a decree, copy of which is attached and made a part hereof. . . . (By this decree it is provided that title to the tract in question is divested out of William Johnson and "vested absolutely" in Virginia Johnson.)

"That William Johnson, after he first left the county prior to 1916, never returned except on one visit to Grady, Arkansas, and after 1916 continued to live in Pittsburgh, died and was buried in Pittsburgh in 1938; he visited Grady, Arkansas, in 1921 subsequent to December, 1916. He knew Virginia Johnson had a divorce.

"William Johnson died intestate in Pittsburgh in 1938 and left no children or descendants and the plaintiffs so far as the issues herein involved are his collateral heirs.

"That Virginia Johnson died intestate in Lincoln county, Arkansas, in 1941 and left no children or descend-

ants and defendants, so far as the issues herein are concerned, are her collateral heirs. Virginia Johnson occupied, held and paid taxes on the lands herein involved as her separate property from the date of the decree, December 9, 1916, until her death in 1941; that defendants are in possession of the property.''

It is urged on behalf of appellants that the decree of divorce was void because it was rendered ''in chambers'' on constructive service and contained a recital to the effect that the defendant ''appeared'' by attorney *ad litem* appointed by the court to notify him of the filing of the suit against him; and that the possession of Virginia Johnson, not being hostile or adverse to William Johnson in its inception, did not thereafter become adverse.

The lower court held that the presumption of the validity of the divorce decree, to which the judgment of any court of superior jurisdiction is entitled, was not overcome and that it followed that title was vested thereby in Virginia Johnson.

But, regardless of whether the divorce decree was valid or void, it was stipulated in this case that William Johnson visited Grady, Arkansas, in 1921, five years after the date of the decree, and that ''he knew Virginia Johnson had a divorce.'' Thus it appears that William Johnson, for more than seven years before his death, knew that his wife had by her divorce proceeding renounced their marital relation and knew that after doing so she continued to live on the land. He must have known that she was not occupying this land as his wife, and that, since she had obtained a divorce from him, her possession was adverse to him.

It was also stipulated that she occupied and paid taxes on the land ''as her separate property'' from the date of the divorce until her death.

The term ''separate property,'' when used with reference to lands owned by a wife, has a well-defined meaning. It means property that the wife owns in her individual right, as distinguished from lands in which she has some right or title growing out of the marital rela-

tion. A wife's separate property is "all property the legal title to which is vested in her individually for her own use and benefit." *Seedhouse* v. *Broward,* 16 So. 425, 34 Fla. 509. "By the common law, the idea attached to separate property in the wife, and which forms a portion of its definition, is, that it is an estate, held as well in its use as in its title, for the exclusive benefit and advantage of the wife." *George* v. *Ransom,* 15 Cal. 322, 76 Am. Dec. 490. "A wife's separate estate is that from which the dominion and control of the husband is excluded, . . ." 30 C. J. 795. So the necessary effect of this stipulation is that Virginia Johnson, for twenty-five years, held and occupied the land as her own individual property and that she was not holding it under any right arising from her marriage to William Johnson. Such occupancy by her was in our opinion adverse to the right of William Johnson and, since it continued for more than seven years, was sufficient to vest title in her.

In the case of *Dail* v. *Etchison, et al.,* 173 Ark. 1180, 291 S. W. 998, it was said: "It is a well-established doctrine of this court that title to lands may be acquired by adverse possession, which title may be asserted as effectively as title acquired by deed. As early as *Jacks* v. *Chaffin,* 34 Ark. 534, we held (quoting syllabus) : 'Possession of land during the full period of limitations, under such circumstances as would make a valid defense, amounts to an investiture of title, which may be actively asserted in all respects, as effectively as if acquired by deed.' See, also, *Logan* v. *Jelks,* 34 Ark. 547; *Wilson* v. *Spring,* 38 Ark. 181; *Crease* v. *Lawrence,* 48 Ark. 312, 3 S. W. 196; *Stricklin* v. *Moore,* 98 Ark. 30, 135 S. W. 360; *Hinton* v. *Martin,* 151 Ark. 343, 236 S. W. 267."

A somewhat similar fact situation was presented in the case of *Jones* v. *Thomas,* 124 Mo. 586, 28 S. W. 76, in which was involved a controversy over certain land owned at one time by Nathan Thomas. In that case the plaintiff claimed under an attachment deed obtained in a suit against Nathan Thomas, and the defendants claimed under Obedience Thomas, wife of Nathan Thomas. It was shown that more than ten years before the institution

of the suit over the land Obedience Thomas had obtained a divorce from Nathan Thomas and a judgment of sequestration by which title to the land in question was vested in her. It was conceded that the judgment of sequestration was void. In that case the court held that the possession of the wife under this admittedly void judgment was nevertheless adverse to the title of her husband and awarded the land to the defendants, who obtained their title through the wife.

In the case of *Warr v. Honeck,* 8 Utah 61, 29 P. 1117, it was held that possession by a wife of land formerly owned by her husband awarded to her under the provisions of a void divorce decree was hostile so as to vest title in her and her grantees by adverse possession.

In the opinion in that case it was said: "All the cases, so far as I have been able to examine them, cited by counsel for appellant in support of the proposition that a wife cannot hold property adversely to her husband, are where the husband and wife are living together, and therefore have no application to this case. The oneness constituted by the marriage relation at common law doubtless is based upon the statement of the Christ, 'For this cause a man will leave his father and his mother and cleave unto his wife, and they twain become one flesh.' But the condition is that he cleave unto her, so that when he ceases to cleave unto her—separates from her—and leaves her to take care of herself and their children, this oneness ceases, and they no longer are one flesh, but are twain, and this the common law recognizes. *Love v. Moynehan,* 16 Ill. 277, 63 Am. Dec. 306, and cases therein cited; *Rhea v. Rhennen,* 1 Pet. 105, 7 L. Ed. 72, and cases therein cited; *Gregory v. Paul,* 15 Mass. 31; *Clark v. Gilbert,* 39 Conn. 94. Many other cases could be cited of like import. They all agree that where a wife is abandoned by her husband, and she is compelled to live separate from him and and support herself and their children, her civil rights are no longer merged in her husband. She can acquire property, sue and be sued, alone, contract and be contracted with as a *femme sole,* even under the rigid rules of the common law. If this be true, why cannot she acquire and hold property in

hostility to and against all claims of her husband? But this respondent is living under the law as now declared by the modern humane law, commonly called 'married woman's statutes.' The married woman's act (2 Comp. Laws, § 2528) being then in force in this territory declares that 'all property owned by either spouse before marriage, and that acquired afterwards by purchase, gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is the separate property of that spouse by whom the same is owned or acquired, and separate property owned or acquired, as specified above, may be held, managed, controlled, transferred, and in any manner disposed of by the spouse so owning or acquiring it, without any limitation or restriction by reason of the marriage.' Section 2528. 'Either spouse may sue or be sued, plead or be impleaded, or defend or be defended, at law.' Considering the liberality of these provisions, it is manifest the abandoned wife may acquire and hold property adversely to her husband.''

We conclude that the lower court properly awarded the land in question to appellees, and its judgment must be affirmed.