STEPHENS *v.* LEDGERWOOD.

4-9034                                    226 S. W. 2d 587

Opinion delivered January 16, 1950.

Rehearing denied February 20, 1950.

*Norton & Norton,* for appellant.

*Earl J. Lane,* for appellee.

ED. F. MCFADDIN, Justice. Appellee, being in possession of a farm of two hundred and forty (240) acres in St. Francis County, brought this suit to quiet his title. Appellant contested the suit. From a decree quieting appellee's title there is this appeal.

## FACTS

Some time prior to 1897 J. H. Dennis, Sr., the owner of the lands herein involved, died intestate, survived by a son herein referred to as Dr. Dennis,[1] and a daughter herein referred to as Mrs. Perle Stephens,[1] the appellant. Appellant then conveyed all her interest in these lands to Dr. Dennis, whose wife was Mrs. Elizabeth Dennis. In 1932 two deeds were recorded in St. Francis County, each dated July 10, 1931, and being: (a) a general warranty deed from Dr. Dennis and Mrs. Elizabeth Dennis, his wife, to Gibson Witt, Jr.; and (b) a general warranty deed from Gibson Witt, Jr., an unmarried person, to Mrs. Elizabeth Dennis.

Each of these deeds (which we will refer to as the "1931 deeds") described the lands as:

" . . . the following lands lying in St. Francis County, Arkansas: The North Half of the Southeast Quarter (N½ SE¼) of Section Three, Township Four, *South,* Range Three *West,* containing eighty acres; Also the Northeast Quarter of Section Five, Township Four, *South,* Range Three *West,* containing one hundred and sixty acres." (Italics our own).

The land involved in this suit and which the appellant had conveyed to Dr. Dennis are described as follows:

[1] In 1897 Dr. Dennis was not a physician, and Mrs. Stephens was not a married woman; but such later became the status of each, and we use these convenient designations for easy identification.

"The North Half (N½) of the Southeast Quarter (SE¼) of Section Three (3), Township Four (4) *North,* Range Three (3) *East* AND the Northeast Quarter (NE¼) of Section Five (5), Township Four (4) *North,* Range Three (3) *East.*" (Italics our own).

In short, it will be observed that each of the 1931 deeds recited the Township as *South* instead of *North,* and the Range as *West* instead of *East.* These statements in the 1931 deeds, as to the direction of the Township (from the Base Line) and Range (from the 5th Principal Meridian), give rise to this suit.

Dr. Dennis departed this life in 1935 intestate and childless, survived by his widow, Mrs. Elizabeth Dennis, and his sister, Mrs. Perle Stephens, the appellant. Mrs. Elizabeth Dennis exercised full ownership and control of the lands until her death in 1945. By her will, she devised the lands herein to the appellee, V. S. Ledgerwood, who immediately entered into possession; and in February, 1949, filed this suit to quiet his title.

The appellant, in contesting the suit, makes these claims: (a) that the 1931 deeds described no lands in St. Francis County; (b) that Dr. Dennis died as the owner of these lands which descended, a portion to his widow and a portion to his sister; (c) that the possession of Mrs. Elizabeth Dennis from 1935 (the death of Dr. Dennis) to 1945 (the time of her death) was the same as that of a co-tenant with appellant; (d) that no notice or knowledge was brought home to the appellant from 1935 to 1945 that Mrs. Elizabeth Dennis was holding the lands adversely to the appellant; (e) that limitations did not begin to run against appellant until appellee took possession in 1945; and (f) therefore, the applicable statute of limitations is not available to appellee. As previously stated, the Chancery Court quieted appellee's title; and the correctness of that decree is assailed by this appeal.

## OPINION

We agree with the Chancery Court. All of appellant's contentions are based on the theory that Dr. Den-

nis was the owner of the lands at the time of his death, and that Mrs. Elizabeth Dennis entered into possession of the lands as the widow of Dr. Dennis. But the evidence shows that Mrs. Elizabeth Dennis went into possession of the lands before the death of Dr. Dennis. The witness Alderson testified that his father rented the lands from Mrs. Elizabeth Dennis in 1933 and 1934.

"Q. During the time . . . your father rented the land, did anyone other than Mrs. Dennis ever make any claim to the land? A. No. Q. Mrs. Dennis held the land out as her property? A. Yes. Q. And received the rentals from it? A. Yes."[2]

The appellant answered questions as follows: "Q. Did you know that your brother deeded this property to his wife back in '31? A. I heard that. Q. You knew that? A. Yes. . . . Q. Assuming Dr. Dennis made a deed to this land to Mrs. Dennis, when did you find it out? A. I would have never done anything as long as Elizabeth lived. . . . Q. With reference to Dr. Dennis' deed to his wife—when did you find out (if you ever did) that Dr. Dennis had made a deed to his wife? Before or after she died? A. I believe it was after. I am not certain."

Thus, not only was there positive evidence that Mrs. Elizabeth Dennis went into exclusive possession of the lands prior to the death of Dr. Dennis, but, furthermore, the appellant would not definitely state that she was unaware of the deed from Dr. Dennis to Mrs. Elizabeth Dennis even during the lifetime of Dr. Dennis. We conclude that the possession of Mrs. Elizabeth Dennis did not commence as widow of Dr. Dennis, but commenced

---

[2] In addition to the above quoted excerpt, the witness, John W. Alderson, Jr., also testified on this point as to when his father rented the land from Mrs. Dennis: "Q. State to the Court the years in which you rented the land and from whom. A. My father died in '42 and from his death until '47 or '48, we rented it from Mrs. J. W. Dennis. Prior to that, my father rented it from Mrs. Dennis for six or seven years— from '33 or '34. Q. From '33 or '34 up until '47, you or your father rented the land from Mrs. Dennis? A. Yes. . . . Q. What year did you say you all first rented the place? A. It must have been between '33 and '35. It was before Mr. Ed Taylor died. Q. When did Mr. Ed Taylor die? A. I don't know, but he suggested that we rent it from them. Q. You could have gone on there in '33, '34, or '35, for the first time? A. Yes."

in 1932 by reason of another claim;[3] and that the 1931 deeds were admissible in evidence as throwing some light on Mrs. Elizabeth Dennis' possession which began in 1932.

The evident purpose of the 1931 deeds was to pass the title of some lands, somewhere, from Dr. Dennis to Mrs. Dennis by the medium of Gibson Witt, Jr., a third party.[4] Definite lands were in the contemplation of the parties. The deeds recited that the lands were in St. Francis County; but they could not be in St. Francis County and be situated in Township 4 *South,* Range 3 *West.* In *Rogers* v. *Magnolia Oil & Gas Company,* 156 Ark. 103, 245 S. W. 802, we held that the Section, with Township and Range directions, constituted a sufficient description of the land without any designation of the county. In *Chestnut* v. *Harris,* 64 Ark. 580, 43 S. W. 977, 62 Am. St. Rep. 213, and *Beck* v. *Anderson-Tully Company,* 113 Ark. 316, 169 S. W. 246, we held descriptions to be sufficient which gave the County and the Section, Township, and Range, even though the directions of the Township and Range did not appear. It is unnecessary to discuss these cases, or to decide whether the designation of the County is inferior or superior[5] to the *direction calls for the Township and Range*; because (a) Mrs. Elizabeth Dennis was in exclusive possession of the lands prior to the death of Dr. Dennis, and (b) the admission in evidence of the 1931 deeds supports the conclusion that she entered into possession by virtue of conveyance from Dr. Dennis.

---

[3] In *Jones* v. *Thomas,* 124 Mo. 586, 28 S. W. 76, the wife had entered into possession of lands under an order awarding them to her in a divorce proceeding. Later the husband died and it was discovered and conceded that the order (awarding the lands to the wife in the divorce case) was void. The Supreme Court of Missouri held that the wife's possession was acquired during the lifetime of the husband and continued to be protected by limitations and that the death of the husband did not convert the wife's possession to the status of a widow claiming dower. We cited the Missouri case with approval in *Bride* v. *Walker,* 206 Ark. 498, 176 S. W. 2d 148. In Jones on "Arkansas Titles," § 1475, this is stated: "As a general rule, when a statute commences to run, it continues to do so until the bar is complete, notwithstanding intervening disability." And see also *Freer* v. *Less,* 159 Ark. 509, 252 S. W. 354, which holds that where a person's possession commenced prior to the death of the ancestor, such death did not halt the statute.

[4] The record here contains no explanation as to why these descriptions were used in these deeds; and there was no effort to reform the descriptions.

[5] See 26 C. J. S. 221.

There remains only the question of whether the appellee made sufficient allegations and proof to have his title quieted. We conclude that he did. He alleged and proved the exclusive and adverse possession of Mrs. Elizabeth Dennis from 1932 to 1945, her devise to him, his exclusive possession from 1945 to 1949, and payment of taxes by him and his predecessor for more than 15 years. In *Robeson* v. *Kempner,* 182 Ark. 746, 32 S. W. 2d 616, a suit to quiet title, we said:

"Our statutes do not require that plaintiffs in suits of this character be required to set out therein their chain of title. In ejectment suits the statutes make such requirements. In suits in equity to quiet titles allegations of ownership are sufficient upon which to base or found the actions."

In 44 Am. Jur. 69, in the topic "Quieting Title," it is stated:

"Where the complainant is in possession of the property, title may be established by a deed which is doubtful or defective; he is not bound to show, as is a claimant in a possessory action, a title which is perfect as against all the world."

In 51 C. J. 175, in the topic "Quieting Title", the text states:

"A defective deed is sufficient to enable plaintiff to sue where the defect is due to a mistake against which the law would afford relief; and even where the deed does not cover the land in dispute, and plaintiff does not present a case entitling him to reformation of such deed, the infirmity is cured by conveyance of his grantor's interest to him before commencement of the action."

The decree of the Chancery Court is affirmed.

GEORGE ROSE SMITH, J., dissenting. The majority's conclusion hinges upon the finding that Mrs. Dennis, in the belief that she owned the land, took possession during her husband's lifetime. We have recognized the possibility of a wife's holding land (other than their residence)

adversely to her husband's title, even though they are living together in harmony. *Evans* v. *Russ,* 131 Ark. 335, 198 S. W. 518. If Mrs. Dennis took possession before Dr. Dennis died in 1935, her continued possession after his death would have been referable to her claim of ownership rather than to her dower right and would have vested title in her after seven years. See *Jones* v. *Thomas,* 124 Mo. 586, 28 S. W. 76, cited by the majority.

But this reasoning no longer applies if Mrs. Dennis did not take possession until Dr. Dennis' death. She would then have entered the land as a tenant in common with the appellant and would have to show that notice of her adverse holding was brought home to her cotenant. That showing has not been made. Hence the finding that Mrs. Dennis took possession before her husband died is the very basis of the majority view. Without detailing the testimony it is enough for me to say that I think the very clear preponderance of the evidence shows that Dr. Dennis continued in possession until his death, and I therefore dissent.