HAYES *v.* GORDON.

4-9148　　　　　　　　　　　　　　　　　228 S. W. 2d 464

Opinion delivered April 3, 1950.

*Surrey E. Gilliam,* for appellant.

*Walter L. Brown* and *Silas W. Rogers,* for appellee.

Ed. F. McFaddin, Justice. This is a dispute between the children of O. C. Hayes, deceased. Appellants are the two children of O. C. Hayes[1] by his first wife, Mrs. Nancy Hayes. Appellees are the three children of O. C. Hayes by his second wife, Mrs. Dasser Hayes.

Appellants, as plaintiffs in seeking partition, alleged that O. C. Hayes died intestate, the owner of a tract of 61½ acres in Union County, Arkansas; and that appellees and appellants each owned one-fifth of said land. Appellees, as defendants, claimed that the tract of 61½ acres was not owned by O. C. Hayes at the time of his death, but was then—and for many years had been—owned by their mother, Mrs. Dasser Hayes, the second wife of O. C. Hayes. In their amended answer, appellees also prayed that the Court correct the description in certain of the deeds under which they claimed title. Each side pleaded limitations, laches, and stale demand.

Upon trial in the Chancery Court the following facts were established:

(1)—That the appellants are the two children of O. C. Hayes by his first wife, Mrs. Nancy Hayes, who died in April, 1896; that O. C. Hayes married his second wife, Mrs. Dasser Hayes, in January, 1898; that appellees are the three children of O. C. Hayes by his second

---

[1] In some instances, the name is spelled "Hays", but it is impliedly conceded that the identity of the parties is the same, regardless of the spelling of the name.

wife; that O. C. Hayes died, intestate, in October, 1928; that Mrs. Dasser Hayes died, intestate, in June, 1948; and that this suit was filed in July, 1948;

(2)—That O. C. Hayes was one of the children of W. N. Hayes; that since 1920 there has been of record a general warranty deed dated January 14, 1904, wherein W. N. Hayes and wife conveyed 61½ acres to "O. C. Hays and Dasser Hays." We will refer to this as the "1904 deed." The description of the land as therein contained is:

"The Southeast Quarter of the Northwest Quarter, and the North Half of the Southwest Quarter of the Northwest Quarter, and one and one half acres lying in the Northwest corner of the Southeast Quarter of the Northwest Quarter, Sec. 21, Twp. 16, Range *18,* containing sixty-one acres and a half more or less." (Italics our own.)

(3)—That since 1920 there has been of record a general warranty deed dated September 5, 1912, wherein O. C. Hayes attempted to convey to Dasser Hayes the 61½ acres described the same as in the 1904 deed, *supra.* This deed from O. C. Hayes to Dasser Hayes will be hereinafter referred to as the "1912 deed."

(4)—That there are also of record six quitclaim deeds, each dated in 1924, from grantors, who with O. C. Hayes were all the heirs of W. N. Hayes; that the grantee in each of these six deeds is "O. C. Hays." We will refer to these six deeds as the "1924 quitclaim deeds." Each of them definitely describes the 61½ acres involved in this suit as follows:

"The Southeast Quarter of the Northwest Quarter and all that part of the Southwest Quarter of the Northwest Quarter lying North and East of the Missouri Pacific Railroad right of way; all in Section 21, Township 16 South, Range 15 West, and also one and one-half (1½) acres lying in the Northwest corner of the Northeast Quarter of the Southwest Quarter of said section, described as beginning at the Northwest corner of said Northeast Quarter of the Southwest Quarter of Section

21, Township 16 South, Range 15 West, running thence West along the North boundary line of said forty acre tract 383 feet, thence South 14 degrees and 2 minutes West 248.8 feet to the Missouri Pacific Railroad right of way, thence Northwest along said right of way to the West line of said forty acre tract, thence North to point of beginning.''

(5)—That after the 1920 discovery of oil near the 61½ acres, O. C. Hayes executed at least six leases or royalty instruments to various third parties at dates between 1921 to 1924; and that Mrs. Dasser Hayes joined in the execution of each of these instruments; and also relinquished dower and homestead in each. These will be referred to as the ''1921 to 1924 mineral instruments.''

From the foregoing, it will be observed that the lands described in the 1904 deed and 1912 deed, *supra,* are shown in Range 18 West, whereas the lands are in fact situated in Range 15 West,[2] as described in the 1924 quitclaim deeds. Also, it will be observed that the 1½ acre tract is otherwise misdescribed in the 1904 deed and the 1912 deed. But the evidence shows that W. N. Hayes owned the lands in Range 15 West, as correctly described in the 1924 quitclaim deeds; and that the 61½ acres so described were the lands all the time in the possession of the Hayes family.

The Chancellor found that under the 1904 deed O. C. Hayes and Dasser Hayes took possession of the lands described in the 1924 quitclaim deeds; that the 1904 deed was intended to describe such lands; that the 1904 deed created an estate by entirety in O. C. Hayes and Dasser Hayes; and that the 1924 quitclaim deeds were designed to, and did in fact, correct the mistake contained in the description in the 1904 deed. On the basis of such findings, the Chancery Court entered a decree for the defendants. The plaintiffs, as appellants, challenge that decree and present the following points:

I. *Effect of the 1924 Quitclaim Deeds.* Appellants argue that the effect of these deeds was to vest the title

_____

[2] The recent case of *Stephens* v. *Ledgerwood*, 216 Ark. 404, 226 S. W. 2d 587, was one in which there was a mistake as to the township and range.

in O. C. Hayes, as he was the only grantee named in them. It is claimed that O. C. Hayes paid his brothers and sisters approximately $3,000 for these deeds. If he made such payments, it was prompted by either his generosity, the avarice of his relatives, or his desire to accomplish quick clarification rather than the delay of a litigated clarification. But regardless of how much O. C. Hayes paid for the 1924 quitclaim deeds, we agree with the Chancery Court that the deeds were merely curative. Ever since the 1904 deed O. C. Hayes and Dasser Hayes had been in possession of the 61½ acres as tenants by the entirety.[3] The 1904 deed misdescribed the lands, but it is clear that it was the intention of W. N. Hayes to describe, in the 1904 deed, the lands which his heirs described in the 1924 quitclaim deeds.

By naming himself as the sole grantee in the 1924 quitclaim deeds, O. C. Hayes could not divest his wife, Dasser Hayes, of her interest in the lands of which she was then in possession. This statement is true for at least two reasons: (a) O. C. Hayes and Dasser Hayes had taken possession of the lands as tenants by the entirety; and any improvement in the title accomplished by one entirety tenant enured to the benefit of the other entirety tenant (see *Brittin* v. *Handy,* 20 Ark. 381, 73 Am. Dec. 497; *Clements* v. *Cates,* 49 Ark. 242, 4 S. W. 776; Jones' "Arkansas Titles," § 200); and (b) O. C. Hayes, by general warranty deed in 1912, had attempted to convey to Dasser Hayes all the title to the 61½ acres which had been deeded to "O. C. Hays and Dasser Hays" by the 1904 deed. Whether the 1912 deed was the correct way for one entirety tenant to convey his interest in the land to the other entirety tenant is a question that we need not discuss because, even if the entirety relation had not existed, the effect of the general warranty clause in the 1912 deed would be to pass to Dasser Hayes, as grantee, all the title subsequently acquired by O. C. Hayes. Such is the effect of our "after-acquired title" Statute, as contained in § 50-404 Ark. Stats. of 1947.

---

[3] See *Parrish* v. *Parrish,* 151 Ark. 161, 235 S. W. 792, Jones' "Arkansas Titles," § 1129.

So we conclude that the 1924 quitclaim deeds did not vest sole title in O. C. Hayes; but on his death the title of the 61½ acres passed to Dasser Hayes, his wife, named as entirety tenant in the 1904 deed, even if the 1912 deed had not passed title.

II. *Effect of the 1921 to 1924 Mineral Instruments.* Appellants contend that Dasser Hayes recognized O. C. Hayes as the fee owner of the lands, rather than merely as the entirety owner with her, because in each of the six "1921 to 1924 mineral instruments" Dasser Hayes relinquished her dower and homestead; and appellants claim that by so doing she recognized him as the exclusive owner of the fee simple title. Most, if not all, of these mineral instruments were executed before O. C. Hayes had received the 1924 quitclaim deeds, so appellants' argument, in some respects, lacks factual basis.

Furthermore, the transcript before us shows that in each of the 1921 to 1924 mineral instruments Mrs. Dasser Hayes *joined as grantor* in addition to relinquishing her dower and homestead. Evidently Mr. and Mrs. Hayes thought when they executed these mineral instruments that the signature of the husband was desirable in the conveyance by a wife of her own land. Furthermore, since this land had originally been acquired by entirety in 1904, the attorney passing the title for the mineral grantees might well have desired the signature of O. C. Hayes to accompany that of Mrs. Dasser Hayes, in order to dispose of any question of entirety title.

We refuse to say that Mrs. Dasser Hayes lost to her husband her interest in the land by allowing him to sign with her the 1921 to 1924 mineral instruments; so we reject appellants' argument on this point.

III. *Limitations, Laches, Delays, and Loss of Evidence as a Bar Against Appellees.* The Chancery Court, by its decree in this cause, reformed the 1904 deed from W. N. Hayes to O. C. Hayes and Dasser Hayes so that the deed described the lands actually involved in this suit. Appellants, in insisting that the Court was in error, point out (a) the death of the principal parties to the convey-

ance; and (b) the death of the scrivener of the 1924 quitclaim deeds.

As previously stated, we agree with the Chancellor that the 1924 quitclaim deeds were designed to and did correct the erroneous description in the 1904 deed, and that it was unnecessary for the decree in this cause to reform the description in the 1904 deed. Furthermore, we agree with the Chancellor that if limitations, laches, delay, and loss of evidence were available to either side in the present controversy, these defenses would enure to the appellees rather than to the appellants: because the appellees are in possession and need no reformation; and furthermore, O. C. Hayes died in 1928; and appellants made no claim to any of the lands until 1948, after the death of Mrs. Dasser Hayes.

IV. *Defect of Parties as a Bar to Reformation.* Appellants further insist that there could be no reformation of the 1904 deed until all of the heirs of W. N. Hayes were made parties to this suit, and cite *Gibson* v. *Johnson,* 148 Ark. 569, 230 S. W. 578, and *Cleveland* v. *Biggers,* 163 Ark. 377, 260 S. W. 432.

We agree with the appellants that, generally, before an instrument be reformed, the grantor, or his heirs, should be parties to the litigation. But in the case at bar appellants' present insistence—even if presented to the Chancery Court below so as to be available on appeal— is a contention which must be denied because the facts in the present case distinguish it from the cited cases. These facts are: that all the other heirs of W. N. Hayes executed to O. C. Hayes the six ''1924 quitclaim deeds,'' so whatever interest W. N. Hayes originally owned passed to O. C. Hayes by the 1924 quitclaim deeds. In short, the 1924 quitclaim deeds had already accomplished the necessary reformation.

We have before us, in the present suit, all the heirs of O. C. Hayes; and the effect of the decree is to hold that O. C. Hayes, in acquiring the 1924 quitclaim deeds, did so as trustee for the use and benefit of Dasser Hayes, to whom he was obligated not only as tenant by the entirety,

but also under the general warranty clause of the 1912 deed; and this interpretation disposes of appellants' contention concerning defect in parties.

V. *Title to the "Home Place" Containing* 1½ *Acres.* When appellants filed their original complaint, they claimed that each of them owned only one-fifth interest in the entire 61½ acres. Later, by amendment, appellants claimed that they were the sole owners of the 1½ acre tract called the "home place," and specifically described by metes and bounds in the 1924 quitclaim deeds. Appellants' claim to the "home place" is based on the testimony of witnesses to the effect that W. N. Hayes gave the 1½ acre tract to his daughter-in-law, Mrs. Nancy Hayes (the mother of the two appellants).

There is evidence which indicates that Mrs. Nancy Hayes was ill, and W. N. Hayes built a house for her on the 1½ acre tract, and that she occupied it until her death. But on the evidence in this record, we cannot find and decree a parol conveyance of the fee title from W. N. Hayes to Nancy Hayes. The conclusion is that W. N. Hayes built the house on the 1½ acre tract, and allowed his daughter-in-law, Mrs. Nancy Hayes, and his son, O. C. Hayes, to occupy the house during all the lifetime of Mrs. Nancy Hayes, who died in 1896; that in 1898 O. C. Hayes married Mrs. Dasser Hayes and continued to live in the same house; but that the ownership of the land remained at all times in W. N. Hayes until he made the 1904 deed to "O. C. Hays and Dasser Hays."

Affirmed.