## WHITE RIVER LEVEE DISTRICT *v.*
### John and Christie REIDHAR

CA 01-466                                    61 S.W.3d 235

Court of Appeals of Arkansas
Division IV
Opinion delivered December 12, 2001

*John H. Bell*, for appellant.

*Gammill & Gammill*, by: *Randall L. Gammill*, for appellees.

JOHN B. ROBBINS, Judge. This appeal comes from a decree dismissing appellant's complaint for ejectment and unlawful detainer and quieting title to approximately forty-four acres of property in appellees. We affirm.

In the 1940s and 1950s, appellant White River Levee District built a levee east of the White River in Prairie, Woodruff, and Monroe Counties. The right-of-way necessary for the Prairie County construction was acquired through deeds from various grantors. The deeds relevant to this case encompassed two particular sections in Township 5 North, Range 4 West: Section 29 and the section directly above it, Section 20. The river ran, for the most part, along the western edge of Section 29 and through the western half of Section 20. The levee ran in a north-south direction through the eastern halves of Section 29 and Section 20. A substantial amount of land all along the western edge of the levee was used by the District as a "borrow pit" to acquire dirt used in construction.

In 1965 and 1966, appellees' predecessor, Franklin Collier,[1] purchased property that lay between the White River and the District's levee property. Collier cleared the property from the river to the borrow pit and began farming it. He did so until 1993, when the property was sold to appellees. Appellees continued to farm the property until 1996, without protest by the District. In that year, appellees commissioned a survey of their property for reasons unrelated to this litigation. The survey indicated that the District's right-of-way actually extended a short distance west of the borrow pit. The extension, though not of great width, ran all along the length of the levee and borrow pit and measured 44.4 acres in area.

When the District discovered the result of the survey, it claimed that appellees and their predecessor had been wrongfully farming the area between the borrow pit and the true right-of-way

---

[1] Collier purchased the land in partnership with James McAlexander. In the 1970s, Collier deeded his interest to McAlexander, who later deeded the property to appellees. However, Collier continued to farm the property as a tenant until 1993, so, for the sake of convenience, we will refer to him as appellees' predecessor in interest.

line. It demanded and received a rental payment from appellees' tenant farmer. On December 7, 1998, the District filed suit against appellees seeking possession of the disputed area. Appellees answered that they and their predecessor had adversely possessed the area for more than seven years, and they asked the court to quiet title in them. The chancellor found that the land descriptions in the deeds under which appellant claimed title were "indeterminate" and did not constitute constructive notice of appellant's claimed ownership of the property in dispute. Further, he found that appellees met their burden of proving adverse possession of the property in dispute, and he quieted title in them.

The District raises two issues on appeal. First, it challenges the chancellor's finding that the deeds by which the District claimed ownership contained indefinite descriptions. Second, it argues that the chancellor erred in finding that appellees proved adverse possession. We need not address the first issue because, even if the deeds contained no defect whatsoever, title to the disputed area was properly quieted in appellees by virtue of their adverse possession claim.[2]

■ Chancery cases are reviewed *de novo* on appeal. *Anderson v. Holliday*, 65 Ark. App. 165, 986 S.W.2d 116 (1999). We do not reverse the chancery court's findings unless they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been committed. *Dillard v. Pickler*, 68 Ark. App. 256, 6 S.W.3d 128 (1999).

■ To prove the common-law elements of adverse possession, the claimant must show that he has been in possession of the property continuously for more than seven years and that his possession has been visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *Anderson v. Holliday, supra.* It is ordinarily sufficient proof of adverse possession that the claimant's acts of ownership are of such a nature as one would

---

[2] The District contends that appellees were not entitled to have title quieted in them by virtue of their adverse possession claim because they raised adverse possession as a defense in their answer, not as a counterclaim. Although appellees did not designate their adverse possession action as a counterclaim, they asked that title be quieted in them, and the case was tried by them, without objection, as though affirmative relief were sought. *See Hempel v. Bragg*, 313 Ark. 486, 856 S.W.2d 293 (1993); *Shinn v. First Nat'l Bank of Hope*, 270 Ark. 774, 606 S.W.2d 154 (1980). Pleadings should be liberally construed so that effect is given to the substance of the pleading rather than the form; a pleading is not judged entirely by what it is labeled but by what it contains. *Cornett v. Prather*, 293 Ark. 108, 737 S.W.2d 159 (1987).

exercise over his own property and would not exercise over the land of another. *See id.* Whether possession is adverse to the true owner is a question of fact. *Id.* We also note that a claimant may "tack on" the adverse-possession time of an immediate predecessor in title. *See Pollins v. Pettus*, 249 Ark. 67, 458 S.W.2d 724 (1970).

■ The appellees showed that they and their predecessor had cleared the property in question and cultivated much of it as farm land beginning in the late 1960s and continuing through the mid-1990s. There was no evidence that this clearing and cultivation was anything other than open, notorious, exclusive, and hostile, in the sense that it was not in recognition of or subservient to another's right to the property. *See Barclay v. Tussey*, 259 Ark. 238, 532 S.W.2d 193 (1976). In fact, the evidence showed that landowners all along the levee had farmed to the edge of the borrow pit for a number of years without complaint from the District. There was also testimony that none of the District's board members actually knew where the right-of-way line was located. Further, a letter from the board's secretary to the attorney general's office in 1996 acknowledged that "the property lines were not marked and maintained to the extent that they would be recognizable by the adjacent landowners or the public at large" and asked if there were "any steps we could take to regain title." In light of this evidence, we cannot say that the chancellor's finding of adverse possession was clearly erroneous.

The District argues that appellees' and their predecessor's use of the disputed property was permissive as opposed to adverse. It bases this argument on the testimony of T.W. Vincent, the District's secretary, that he considered the farming of the property permissive because it benefitted the District to have the land cleared and cultivated. The District also relies on a purported offer by appellee John Reidhar at a 1996 District board meeting to pay rent on the property and the actual payment of rent to the District by appellees' tenant in 1996.

■ It is generally recognized that occupation of property is not adverse where a claimant has the owner's permission to enter the property, although it may become adverse under certain circumstances. *See Tolson v. Dunn*, 48 Ark. App. 219, 893 S.W.2d 354 (1995). The District admits in its brief that there was no evidence it gave Franklin Collier, appellees' predecessor, express permission to clear and cultivate the land in dispute. Instead, it argues that the mere existence of a benefit accruing to the District by virtue of

Collier's and appellees' occupation implied the existence of permission. No authority is cited for this proposition, nor are we aware of any. Regardless, we are unwilling to hold that a collateral benefit that results to the owner from a possessor's use is sufficient to declare the use permissive.

As for the argument that John Reidhar offered to pay rent on the property at a District meeting, that evidence was disputed. The chancellor was entitled to resolve that conflict in favor of appellees. *See McNamara v. Bohn*, 69 Ark. App. 337, 13 S.W.3d 185 (2000). Further, there was evidence that the 1996 rental payment was made by appellees' tenant without their prior knowledge and in an attempt by the tenant to avoid going to court.

The District's final argument is that appellees are not entitled to adverse possession of the entire 44.4 acres in dispute but, at most, to that part of the disputed area that is actually cultivated as farm land. The record, as abstracted, does not reveal that the District asked the chancellor, either during trial or in a posttrial motion, to restrict any adverse possession by appellees to a lesser amount of acreage than the 44.4 acres they described in their answer. In any event, appellees and their predecessor asserted possession of the entire area between the right-of-way line and the borrow ditch, regardless of whether it was farmed. Further, they evidenced possession of the areas that were not cultivated by demonstrating that they had posted such areas. We cannot say that the District has made a sufficient showing on appeal that appellees' adverse possession should be restricted to the cultivated areas.

Affirmed.

GRIFFEN and ROAF, JJ., agree.