Rodney RICE, Pat Rice, Hubert Moore, and Ann Moore  *v.*
WELCH MOTOR COMPANY

CA 05-1136                                     234 S.W.3d 327

Court of Appeals of Arkansas
Opinion delivered April 19, 2006

*Graddy & Adkisson, LLP*, by: *William C. Adkisson*, for appellants.

*Eudox Patterson*, for appellee.

OLLY NEAL, Judge. This case concerns a dispute over a strip of land along appellants' and appellee's common

border. The trial judge quieted title to the property in appellee, and appellants now appeal from that ruling. We affirm.[1]

The parties are long-time owners of adjoining lots on Lake Catherine in Garland County. Appellants' deed grants them 75 feet of road frontage on the north and 150 feet of lake frontage on the south. To their west is a lot owned by appellee, Welch Motor Company; appellee's deed grants it 204 feet of road frontage on the north and 278 feet of lake frontage on the south. Along their common border, there is a small indentation in the land, a valley of sorts, that runs downhill from the road to a small cove on the lake. This valley contains the fifteen-foot strip at issue.

Uncertainty over ownership of the strip has its origins in two 1930s deeds to the parties' predecessors. Those deeds contain fifteen-foot overlapping conveyances. However, no active dispute arose until 2003 when appellee commissioned a survey that reflected it as the owner of the area in question. According to appellee, when appellant Hubert Moore expressed dissatisfaction with the survey, it filed the present quiet-title action. Appellants answered and counterclaimed, asserting their own claim to the area by virtue of adverse possession. Later, they obtained a survey depicting them as owners of the fifteen-foot strip.

On April 8, 2004, the case was tried before the circuit judge sitting as fact-finder. After hearing the testimony of over a dozen witnesses, viewing more than twenty exhibits, and visiting the property in question, the judge ruled that 1) the deed in appellee's chain of title, which conveyed the fifteen-foot strip, was the superior deed, and 2) appellants did not establish their claim for adverse possession. The judge then entered an order quieting title to the disputed strip in appellee as per appellee's survey. Appellants filed a timely notice of appeal and now argue that the trial court erred in: 1) finding that they did not establish their adverse-possession claim; 2) adopting the legal description from appellee's survey; 3) finding that the deed in appellee's chain of title was superior.

Traditional equity cases, such as quiet-title actions, are reviewed de novo on appeal. *See White River Levee Dist. v. Reidhar*, 76 Ark. App. 225, 61 S.W.3d 235 (2001). However, we will not reverse the trial court's findings of fact unless they are clearly

---

[1] A prior appeal in this case was dismissed for lack of an appealable order. *Rice v. Welch Motor Co.*, No. CA04-1063 (Ark. App. June 8, 2005) (not designated for publication).

erroneous. *Id.* A finding of fact is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been committed. *Id.*

## Deed Superiority

Although appellants present the issue regarding deed superiority as their third point on appeal, we believe that logic dictates that we address this issue first in order to establish which party held paramount legal title. The pertinent facts are as follows.

The property in question lies in the Southwest Quarter of the Southwest Quarter of Section 22 in Garland County, which will hereafter be referred to as "the forty." The land in the forty was acquired by E.O. Kilpatrick in 1928, and thereafter, he began selling it in lots. A lot contiguous to the eastern line of the forty was sold to a man named Guthrie, and a lot much farther west was sold to a man name Willingham. The area between those two lots would eventually be sold to appellants' and appellee's predecessors.

The first deed in appellee's chain of title was from Kilpatrick to D.D. Glover. The deed's point of beginning is along the northern road, 110 feet west of the forty line. The description then proceeds as follows:

> Magnetic south 6 degrees and 30 minutes, West 375 feet to a White Oak about 14 inches in diameter on the Flood Line of Lake Catherine said tree marked with a blaze on four sides, thence in a westerly direction along the flood line 278 feet to the south east corner of Willingham's Property said corner being marked by an Iron Stake, thence North 27 degrees East 4 chains and 55 links (Equals 303.3 feet) to the North East Corner of Willingham['s] property, and thence to center of the road, thence east along the center of the road 204 feet to the point of beginning.

This deed was recorded in 1939, although it stated that it was a duplicate of a deed executed in 1934.

The relevant deed in appellants' chain of title was from Kilpatrick to Lloyd Rhodes, conveying the western portion of what is now appellants' lot (the eastern portion had previously been conveyed to Ed Davis, but that deed is not pertinent here). Its description reads:

> Pt. of SW SW 1/4 Sec. 22 Twp. 3 S. R. 18 West, more minutely described as following, Commencing at a point 200 feet Westerly

> from the East line of said forty and at the Ed Davis S.W. Corner on lake; thence northerly along flood line of lake *about 110 feet to center of the valley to the D.D. Glover lot corner;* thence northerly about 470 feet to center of road; thence East along center of road fifty feet to corner of Ed Davis Lot; thence South about 475 feet to place of beginning.

(Emphasis added.) This deed was recorded in 1936.

Although it is difficult to tell from the bare descriptions, the above conveyances overlap by fifteen feet on their northern ends. Appellants argued at trial that the deed of their predecessor, Rhodes, contained the paramount grant of the fifteen-foot strip because it was recorded first. The trial court ruled, however, that the reference in the Rhodes deed to "the D.D. Glover lot corner" showed that Kilpatrick and Rhodes had actual knowledge of the Glover conveyance and, thus, the Glover deed, although recorded later, took priority.

Generally, an instrument in writing that affects real property shall not be valid against a subsequent purchaser unless it is filed of record in the county where the real estate is located. *See Killam v. Tex. Oil & Gas Corp.*, 303 Ark. 547, 798 S.W.2d 419 (1990); *Smith v. Parker*, 67 Ark. App. 221, 998 S.W.2d 1 (1999); *see also* Ark. Code Ann. § 14-15-404(b) (Repl. 1998), which provides:

> No deed, bond, or instrument of writing for the conveyance of any real estate, or by which the title thereto may be affected in law or equity, made or executed after December 21, 1846, shall be good or valid against a subsequent purchaser of the real estate for a valuable consideration without actual notice thereof or against any creditor of the person executing such an instrument obtaining a judgment or decree which by law may be a lien upon the real estate unless the deed, bond, or instrument, duly executed and acknowledged or proved as required by law, is filed for record in the office of the clerk and ex officio recorder of the county where the real estate is situated.

However, if a subsequent purchaser has actual notice of a prior unrecorded deed, he takes subject to it. *See Killam, supra; see also Wasp Oil, Inc. v. Ark. Oil & Gas, Inc.*, 280 Ark. 420, 658 S.W.2d 397 (1983); *Henderson v. Ozan Lumber Co.*, 216 Ark. 39, 224 S.W.2d 30 (1949); *Skelly Oil Co. v. Johnson*, 209 Ark. 1107, 194 S.W.2d 425 (1946). A subsequent purchaser will be deemed to have actual notice of a prior

interest in property if he is aware of such facts and circumstances as would put a person of ordinary intelligence and prudence on such inquiry that, if diligently pursued, would lead to knowledge of the prior interest. *Killam, supra.* This type of notice must be enough to excite attention or put a party on guard to call for an inquiry. *Id.* Whether one buying land has actual notice of another's interest in the land is a question of fact. *See Smith, supra.*

We note first that Rhodes's grantor, Kilpatrick, clearly had knowledge of the prior deed to Glover because Kilpatrick was Glover's grantor. Moreover, we do not believe that the trial court clearly erred in ruling that Rhodes had notice of the Glover deed as well. Rhodes's deed, in establishing its dimensions, makes reference to "110 feet to center of the valley to the D.D. Glover lot corner." Rhodes was thus notified that the property adjacent to his had been conveyed to Glover, that Glover's lot corner was in the center of the valley, and that, to a significant extent, his (Rhodes's) interest was defined by the location of Glover's boundary. This information was sufficient to put Rhodes on "such inquiry that, if diligently pursued, would lead to knowledge of the prior interest." *Killam, supra.* By either calling for a copy of Glover's deed or simply making an inquiry to Kilpatrick, Rhodes could have discovered the existence of the prior holding. *See, e.g., Killam, supra,* where language in a "wild deed" indicating a possible prior interest put a subsequent purchaser on notice.

Appellants contend, however, that the Glover deed's description was inadequate to convey any notice to subsequent purchasers. Yet, the cases they cite in support of this argument — *Bowlin v. Keifer,* 246 Ark. 693, 440 S.W.2d 232 (1969); *Turrentine v. Thompson,* 193 Ark. 253, 99 S.W.2d 585 (1936); and *Evans v. Russ,* 131 Ark. 335, 198 S.W. 518 (1917) — are distinguishable in that they contain descriptions from which it is wholly impossible to locate the land in question. The court in *Turrentine* went so far as to observe that the descriptions in that case could not even identify the property as being in any particular county or state. The description in the Glover deed, by contrast, furnishes several keys for locating the property. It places the lot in a specific forty-acre parcel, provides an exact beginning point, states the dimensions of the lot size, and references various monuments. In light of these factors, we find no error on this point.

*Adverse Possession*

Appellants argue next that the trial court erred in ruling that they failed to prove adverse possession of the disputed area. To prove the common-law elements of adverse possession, the claimant must show that he has been in possession of the property continuously for more than seven years and that his possession has been visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *Reidhar, supra.* It is ordinarily sufficient proof of adverse possession that the claimant's acts of ownership are of such a nature as one would exercise over his own property and would not exercise over the land of another. *Id.* Whether possession is adverse to the true owner is a question of fact. *Id.*[2]

At trial, appellants presented proof of various activities that they conducted in the disputed area and argued that they, rather than appellee, exercised control and dominion over the area. While we agree that appellants presented some evidence on this point, we also note that appellee presented similar evidence on its behalf. Its witnesses, which included the son of one of appellants' predecessors in title, testified that it had always been understood that the disputed area was under appellee's ownership. Other witnesses testified that appellee (actually, the Welch family) had used and maintained the disputed property. Further, there was evidence that, prior to this dispute, appellants and the Welch family were close friends and that appellants amicably came onto appellee's property at will, thus indicating that appellants' use of the disputed area may have been permissive rather than adverse. *See Reidhar, supra* (recognizing that, generally, occupation of property is not adverse where a claimant has the owner's permission to enter the property).

In any event, this is a case in which there was evidence on both sides of the issue, and, when the evidence is conflicting or evenly poised, or nearly so, the judgment of the trial judge on the question of where the preponderance of the evidence lies is

---

[2] In 1995, the General Assembly added, as a requirement for proof of adverse possession, that the claimant prove color of title and payment of taxes on the subject property or contiguous property for seven years. *See* Ark. Code Ann. § 18-11-106 (Repl. 2003). Because we are upholding the trial court's ruling that appellants did not prove the common-law elements of adverse possession, it will not be necessary for us to address the statutory requirements.

persuasive. *Belcher v. Stone*, 67 Ark. App. 256, 998 S.W.2d 759 (1999). Further, the genuineness of the witnesses' testimony, which appellants question herein, is a credibility question on which we defer to the trial court. *See id.* Based on these considerations, we decline to reverse on this point.

### Use of Appellee's Survey

■ Finally, we address appellants' claim that the trial court erred when, in its final order quieting title in appellee, it adopted the description contained in appellee's survey. One of appellants' points of error is that the description was recited in the final judgment but not in the trial court's prior letter opinion. However, a trial court is required, in a quiet-title action, to enter a final judgment that specifically describes the boundary between the litigants' properties. *See Jennings v. Burford*, 60 Ark. App. 27, 958 S.W.2d 12 (1997). Further, the fact that the description was not contained in the letter opinion did not prevent the court from placing it into the final judgment. *See Moses v. Dautartas*, 53 Ark. App. 242, 922 S.W.2d 345 (1996) (holding that a final determination of the parties' rights was not made until the entry of judgment).

■ Appellants also question some of the methods used by appellee's surveyor, R.L. Smith, in establishing the lot boundaries. Without going into the specifics of the survey, we believe it is sufficient to say that there was evidence from which the trial court could have concluded that Smith conducted a studied and commendable effort at establishing the parties' true boundaries, given the confused state of their predecessors' deeds. The credibility of a surveyor is a question for the fact-finder. *See Killian v. Hill*, 32 Ark. App. 25, 795 S.W.2d 369 (1990); *see also Ward v. Adams*, 66 Ark. App. 208, 989 S.W.2d 550 (1999) (deferring to the trial court on the comparison and credibility of surveys). We therefore affirm the trial court's use of the Smith survey.

Affirmed.

BIRD and BAKER, JJ., agree.