2011 Ark. App. 302

**George GIBBS and Rachel Gibbs, Husband and Wife, Appellants**

v.

**Roger Dale STILES and Sherrie Lee Turner Stiles, Husband and Wife, Appellees.**

No. CA 10–1315.

Court of Appeals of Arkansas.

April 27, 2011.

454

Constance G. Clark and William Jackson Butt, II, Fayetteville, for appellant.

J. Rebecca Pratt Hass, Fayetteville, for appellee.

LARRY D. VAUGHT, Chief Judge.

This is an appeal from a finding of the Madison County Circuit Court that appellees Sherrie and Roger Stiles acquired title to property once owned by appellants Rachel and George Gibbs by adverse possession. On appeal, the Gibbses argue that the trial court erred in its finding because the deed relied upon by the Stileses was facially invalid or indefinite, and as such did not constitute color of title. The Gibbses also argue that the trial court erred in finding that the Stileses had paid property taxes on the disputed property. We agree on both points and reverse the trial court's finding of adverse possession.

The facts of this case are as follows. By a warranty deed recorded on May 6, 1998, the Stileses purchased a tract of land from Winona and Bobby Waggoner. The property is located in Madison County, and includes a portion of the NW1/4 of the SE1/4 of Section 33, Township 14 North, Range 27 West lying south of "the centerline of the White River Channel." A warranty deed recorded on May 26, 2000, established that the Gibbses purchased from Debra and Jackie Phillips a 217 acre parcel of property in Madison County, including a portion of the NW1/4 of the SE1/4 of Section 33, Township 14 North, Range 27 West described as lying north of "the center of White River."

The White River runs in an approximate east-to-west direction through the forty-acre tract, thereby dividing the northern part of the land owned by the Gibbses from the southern part owned by the Stileses. In this location, the White River is comprised of a flowing channel (excepting extraordinarily dry times). There is also a backwater slough that splits off from the river to the north but does not connect with the upriver section of the White River and does not have any flow, except in the highest flood waters.

For many years the chain of title leading to the deeds of the litigants consistently described the boundary as "the river," "White River," or "center of White River." However, prior to their purchase, the Stileses obtained a survey from William Jenkins in which the northern boundary was fixed by course and distance measurements that described the slough portion, rather than the flowing channel of the river. His survey labeled the flowing channel as the "river's side channel."

On March 10, 2008, the Gibbses filed suit against the Stileses asking the court to determine the proper boundary line between the parties' property and to quiet title in the disputed portion of land in the Gibbses' favor. In their suit, the Gibbses contended that as a result of the Jenkins survey, the Stileses were deeded property lying north of the White River to which the Stileses' grantors did not have title. The Gibbses asserted that title to this disputed piece of property remained with the Gibbses' grantors until it was properly conveyed to the Gibbses in 2000. On April 7, 2008, the Stileses answered the complaint and filed a counterclaim, asking that they be determined to be the owners of the disputed property or, alternatively, be found to have acquired title to the unimproved and unenclosed property by adverse possession. Both parties also filed counterclaims against their respective grantors.

On April 27, 2009, the case was tried to the court and a letter opinion was filed on June 9, 2009. The court found that: 1) the main channel of the White River is the boundary between the parties' properties; 2) the main channel of the river had been moving south and west over a period of years by accretion causing the boundary between the properties to move with it; 3) the Stileses had color of title based on the Jenkins survey and subsequent deed and had been paying taxes on the disputed acreage continuously for ten years; 4) the Stileses had met the requisite statutory requirements and acquired title to the land by adverse possession.

On July 17, 2009, the Gibbses filed a motion for new trial, contending that the court erred in finding that the Stileses had color of title to the property, and that if they did have color of title, there was insufficient proof that they had paid taxes on the precise portion of disputed property. The motion was denied, and (after correcting a Rule 54(b) error) a proper and timely appeal of the trial court's adverse-possession finding was filed with our court.

We traditionally review quiet-title and boundary-line actions de novo. *Price v. Rylwell, LLC,* 95 Ark. App. 228, 235 S.W.3d 908 (2006); *Boyette v. Vogelpohl,* 92 Ark. App. 436, 214 S.W.3d 874 (2005). We will not, however, reverse findings of fact unless they are clearly erroneous. *Id.* at 440, 214 S.W.3d at 877. Further, whether possession is adverse to the true owner is a question of fact. *White River Levee Dist. v. Reidhar,* 76 Ark. App. 225, 61 S.W.3d 235 (2001). We will not reverse a trial court's finding regarding adverse possession unless it is clearly erroneous. *Id.* at 228, 61 S.W.3d at 237.

To prove the common-law elements of adverse possession, a claimant must show that he has been in possession of the property continuously for more than seven years and that his possession has been visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *Id.* at 228, 61 S.W.3d at 238. It is ordinarily sufficient proof of adverse possession that the claimant's acts of ownership are of such a nature as one would exercise over his own property and would not exercise over the land of another. *Id.* at 228–29, 61 S.W.3d at 237.

The Arkansas statutory requirements for adverse possession were amended in 1995, requiring the party seeking adverse possession to unimproved and unenclosed land to show both color of title and the payment of taxes to the land in dispute, in addition to all of the elements necessary under common-law adverse possession. Ark.Code Ann. § 18–11–106 (Supp.2009).

The codified version of this provision reads as follows

(a) To establish adverse possession of real property, the person, and those under whom the person claims, must have actual or constructive possession of the property being claimed and have either:

(1)(A) Held color of title to the property for a period of at least seven (7) years, and during that time have paid ad valorem taxes on the property.

(B) For purposes of this subdivision (a)(1), color of title may be established by the person claiming adversely to the true owner by paying the ad valorem taxes for a period of at least seven (7) years for unimproved and unenclosed land or fifteen (15) years for wild and unimproved land, provided the true owner had not also paid the ad valorem taxes [5]or made a bona fide good faith effort to pay the ad valorem taxes which were misapplied by the state and local taxing authority; or

(2) Held color of title to real property contiguous to the property being claimed by adverse possession for a period of at least seven (7) years, and during that time have paid ad valorem taxes on the contiguous property to which the person has color of title.

(b) The requirements of this section are in addition to all other requirements for establishing adverse possession.

(c) This section shall not repeal any requirement under existing case law for establishing adverse · possession, but shall be supplemental thereto, and, specifically, this section shall not diminish the presumption of possession of unimproved and unenclosed land created under § 18–11–102 by payment of taxes for seven (7) years under color of title, or the presumption of color of title on wild and unimproved land created under § 18–11–103 by payment of taxes for fifteen (15) consecutive years.

Ark.Code Ann. § 18–11–106 (Supp.2009).

In examining the color-of-title requirement under our state's current adverse-possession law, we must first consider the legal meaning, albeit amorphous, of "color of title." In *Bailey v. Jarvis*, 212 Ark. 675, 680, 208 S.W.2d 13, 15 (1948), our supreme court broadly defined the meaning of "color of title" by adopting the following language from a West Virginia decision:

> Color of title is not, in law, title at all. It is a void paper, having the semblance of a muniment of title, to which, for certain purposes, the law attributes certain qualities of title. Its chief office or purpose is to define the limits of the claim under it. Nevertheless, it must purport to pass title. In form, it must be a deed, a will, or some other paper or instrument by which title usually and ordinarily passes.

In *Rye v. Baumann*, 231 Ark. 278, 282, 329 S.W.2d 161, 165 (1959), the court expanded on this definition by stating in a footnote:

> Color of title is an apparent title to land founded upon a written instrument, such as a deed, levy of execution, decree of court or the like. Color of title, for the purpose of adverse possession under the statute of limitations [,] is that which has the semblance or appearance of title.

[6]However, in *Glover v. Walter*, 252 Ark. 1293, 483 S.W.2d 713 (1972), the supreme court added a new component to its prior "facially valid" color-of-title standard. The court held that despite holding two facially valid tax deeds, the adverse claimant did not have color of title. In particular, the court found that one of the deeds describing the land as "the Southwest Quarter of Section 3, Township 4 South, Range 10 West 'Exc. that Pt. S. of River' " failed to constitute color of title because all of the "Southwest Quarter of Section 3" lay south of the river. *Id.* at 1296, 483 S.W.2d at

714–15. Although the error in this description would have been apparent to anyone who compared the recited boundaries in the deed with an accurate map of the area, it would not have been obvious from the face of the instrument alone. Thus, the *Glover* court held the grantee to a higher standard than facial validity by requiring him to possess basic knowledge of local metes and bounds descriptions.

This line of reasoning was further developed by our court in *Rio Vista Inc. v. Miles,* 2010 Ark. App. 190, 374 S.W.3d 698, where a dispute arose over a narrow strip of land along the northeast bank of the Spring River. Rio Vista acquired title to the land by virtue of a warranty deed that referred to a recorded plat of the Rio Vista subdivision. The plat contained a handwritten notation on a line drawn near the northeast bank of the river that stated, "Top Bank of River Property Line of LL Ward Jr." *Id.* at 2, 374 S.W.3d at 700. A later quitclaim deed to Rio Vista stated, "Per plat of W.D. Cobb...." The trial court found the description to mean the "top of bank" and that it did not establish color of title to the disputed property, and we agreed. *Id.* at 2–3, 374 S.W.3d at 700–01. Importantly, we looked beyond the face of the instrument itself to decide that the deed did not establish color of title.

■ It is a continuation of this logic that we use to resolve the pending case. Here, the Stileses' surveyor admitted that he used the slough as the northern boundary and called the main channel of the White River a side channel in order to "come up with" enough acreage to satisfy his clients' desires and to match the tax assessment. The surveyor conceded (and the trial court correctly found) that under established law, the course and distance boundary is subordinate to the natural monument boundary of the "centerline of the White River Channel." *See Wyatt v. Ark. Game & Fish Comm'n,* 360 Ark. 507, 516, 202 S.W.3d 513, 519 (2005). Further, the surveyor did not walk the property or reference a topographical map to check the natural river mark and admitted that he was violating surveying practices in order to "come up with" twenty-three acres south of the river to be added to the seventeen he located north of the river in order to total the taxed forty-acre section. In fact, the trial court noted that river was clearly ascertainable and was the true boundary. As such, and despite the "facially valid" deed, it cannot be said that color of title existed here.

■ Although we need not address the Gibbses' second point on appeal because the trial court's finding of adverse possession in favor of the Stiles cannot survive our conclusion that they did not possess sufficient color of title, we summarily note that we agree that the trial court also erred in finding that the Stileses had paid taxes on the disputed land. While the evidence does show that the Stileses paid taxes from 1998 through 2007 on 30.1 acres in two quarter-quarter sections, the records do not show that they paid taxes on the specific piece of property in dispute. The record established that thirty seven of the forty acres were assessed and taxed. The Stileses' own surveyor—even with the benefit of a non-standard method of surveying—was unable to find the other three "missing" acres. As such, an alternate grounds for reversal exists as the Stileses have not shown that they have met the statutory requirements of tax payment on the specific acreage in dispute.

Accordingly, the trial court's finding of adverse possession is reversed.

Reversed.

GLADWIN and HOOFMAN, JJ., agree.