2011 Ark. App. 598

**Charlie SMITH, Jr., Appellant**

v.

**Mary D. SMITH and L. Sanford Smith Testamentary Trust, Appellees.**

**No. CA 11–15.**

Court of Appeals of Arkansas.

Oct. 5, 2011.

Elliot Dion Wilson, Helena, for appellant.

Robert G. Serior, Claredon, for appellees.

CLIFF HOOFMAN, Judge.

⌊₁Appellant Charlie Smith, Jr. appeals the trial court's decision quieting title to 27.5 acres of land in appellee Mary D. Smith, as trustee of the L. Sanford Smith Testamentary Trust, by adverse possession. Appellant argues on appeal that the trial court erred in its decision. We affirm the decision to quiet title in appellee but modify the legal description of the property to the extent that it is erroneously stated in the quiet-title decree.

On November 14, 2008, appellee filed a complaint against appellant[1] seeking to quiet title to the following described land located in Phillips County, Arkansas, hereinafter referred to as the "subject property:"

All that part of the West Half of the Northeast Quarter (W 1/2 NE 1/4) in Section Nineteen (19), Township Two (2) South, Range Three (3) East (T2S R3W), Phillips County, Arkansas, lying North (N) of the Beaver Bayou Drainage Canal, containing 27.5 acres, more or less.

Appellee alleged in the complaint that she and her predecessors in title owned land, referred to as the "homestead property," which is directly adjacent to the subject property to the north. According to the complaint, appellee and her predecessors in title have had color of title in the homestead property for more than fifty years, and they have paid ad valorem taxes on this property for this entire time. She also alleged that she and her predecessors have held color of title to the subject property since her late husband, Sanford L. Smith, received a warranty deed to the property from his mother, Odeal Smith, on February 23, 1954, and that they have been in open, notorious, continuous, exclusive, hostile, adverse, and actual possession of the property since that time. Beginning after the death of appellee's husband on December 11, 2004, appellee alleged that appellant began trespassing on the subject property. Appellee claimed that appellant, on different occasions, had placed survey flags on the subject property, had planted a row of tree seedlings, and had harassed the employees of appellee's tenant as they were harvesting crops they had planted on the subject property. The complaint further alleged that on November 10, 2008, appellant placed fence posts on the property without the approval or consent of appellee. Appellee prayed that fee simple title to this subject property be quieted in her as trustee through the doctrine of adverse possession and that a temporary restraining order be entered against appellant to prohibit him from building the fence or otherwise interfering with appellee's use of the property.

On April 23, 2009, appellant filed a counterclaim, alleging that he owned the subject property pursuant to a warranty deed filed on February 12, 1964, and that he and his predecessors in title had color of title and had paid all taxes on the property for more than fifty years. Appellant requested that title be quieted in him. Appellee filed her response denying the allegations in the counterclaim and pleading adverse possession as an affirmative defense.

On May 8, 2009, appellee filed an amended complaint, restating all of the allegations in the original complaint and seeking to join First Bank of the Delta as a necessary party because the bank was a mortgagee on appellant's mortgage on the subject property. Appellant filed an answer on May 12, 2009, generally denying the allegations in the amended complaint, and on May 27, 2009, First Bank filed its answer admitting that it had a deed of trust on the subject property and alleging that its lien on the property was valid and prior to any claim by appellee.

Appellee's request for a temporary restraining order against appellant was granted by the trial court on June 1, 2009, after a hearing on the matter. Appellee also filed a motion for summary judgment

---

1. The complaint originally named both Charlie Smith, Jr., and his wife, Ella Wee Smith, as defendants; however, Ella Smith died prior to the hearing, and her name was subsequently removed from the style of the case.

with supporting affidavits, which was denied by the trial court on the basis that there were unresolved issues of fact in the case.

At the hearing on May 6, 2010, appellee introduced exhibits substantiating her color of title to the land at issue, including the subject property. The first deeds pertinent to this case were filed in November 1938: from Beaver Bayou Drainage District to Odeal Smith, appellee's mother-in-law, and from Henry and Blanche Davidson to Odeal Smith, which conveyed the 27.5 acres in the subject property. A redemption deed for the subject property was then filed in 1948 to the L.S. Smith Estate, which was Odeal Smith's husband's estate. Next, in February 1954, there is a warranty deed from Odeal Smith to Sanford Smith, appellee's husband, that also conveyed the subject property. After Sanford Smith's death, his last will and testament was filed on April 4, 2005, appointing appellee as executrix and trustee of his estate, and a fiduciary deed was recorded on November 12, 2008, transferring the property at issue to appellee as trustee of the L. Sanford Smith Testamentary Trust.

Appellee introduced the testimony of several witnesses to support her claim of adverse possession of the subject property. Harry Schwantz testified that he is fifty-five years old, that his father and Sanford Smith were close friends, and that he remembered Sanford farming the subject property since 1964 or 1965. He also personally farmed the land for Sanford in 1973 and in 1985. Harry testified that Sanford continued to farm the subject property until the mid–1990s, when his tenant, Vic Richmond, started farming the land. He further stated that he had never seen appellant on the property prior to Sanford's death in 2004 and that appellant had never asked him to get off of the property.

Hershell Schwantz, Harry's brother, also testified. He stated that he worked on Sanford Smith's farm from 1981 until 1984, and that he hunted and played on the subject property when he was a child. He testified that he had never seen appellant on the property or had a confrontation with him about ownership of the property.

Louise Smith Bloesch, who is Sanford Smith's sister, testified that she is eighty-seven years old and that she grew up on the homestead property adjacent to the subject property. She stated that her family had farmed the subject property at least since she was a teenager and that her brother farmed the property from at least 1954 until the 1990s, when he retired and rented the land to Richmond. According to Bloesch, she had never seen appellant on the subject property nor heard of him claiming ownership of it.

Louise's son and Sanford's nephew, Emil Bloesch, testified that he was very familiar with the subject property and that he remembered his uncle planting soybean crops on the property from 1952 through 1964. He also had no knowledge of appellant being on the property or claiming ownership.

The next witness was Vic Richmond, the current tenant of the subject property. He testified that he grew up in the area and remembered seeing Sanford Smith farm the land since he was a child. Richmond stated that he personally helped plant crops on the land in 1978 through 1982. When Sanford retired in 1996, Richmond testified that he began renting the property and that he has continued to farm the land until the present time. Richmond stated that he had never seen appellant on the land and that the first time that he became aware of any claim by appellant was in the spring of 2008, when appellant approached Richmond's farm manager and stated that he owned the

land. Richmond stated that he also discovered during this same time period that trees had been planted on a portion of the subject property and that fence posts had been erected along the northern boundary.

Edith Whitted, a licensed abstractor with East Arkansas Title Company, was also called as a witness. She introduced a document listing the tax payments on the contiguous homestead property and the names under which the property was assessed each year. This document reflects that taxes were paid on the property from 1954 on and that it was assessed under the names of appellee and her predecessors in title.

Appellee also testified and stated that she had lived on the adjoining homestead property since she married Sanford Smith in 1973. According to appellee, her late husband farmed the subject property the entire time that they were married until he retired in 1996, when Richmond started renting and farming the property. She testified that she had never seen appellant on the subject property until the spring of 2008 and that she was not aware that she and her predecessors had not been paying taxes on the adjoining subject property until this litigation arose, as she assumed this land was included in the taxes that had been paid on the homestead property. Appellee stated that appellant's property was south of the drainage canal and that there was no way across the canal onto the subject property from his land, so that appellant had to come around by road.

In support of his claim to the property, appellant testified that he and his wife purchased the subject property in 1964 from Blanchie Davidson, that they received a quitclaim deed, and that they have paid ad valorem taxes on the property since that time. He further stated that he had redeemed the property for nonpayment of taxes in 1974, 1979, and 1982.

According to appellant, the property was full of weeds, undergrowth, and vines when he bought it and could not be farmed until 1966, when he cleared part of it. Appellant testified that Sanford started farming the property in 1966 and that he had conversations with him about ownership of the land at that time, to no avail. Appellant also consulted a lawyer in 1974, but stated that he did not pursue filing a lawsuit at that time. He testified that he did place stakes on the property from 1967 until 2010 and that he also placed barrels with no trespassing signs from 1998 through 2006. In 2007, appellant testified that he obtained a ten-year contract with the federal government to plant trees and that he planted 1200 tree seedlings on the subject property that were then destroyed when Richmond harvested his crops.

Appellee then recalled Richmond as a rebuttal witness. He testified that he never saw any barrels or flags on the subject property prior to 2008 and that none of his farm workers reported any barrels or flags on the property. He again stated that the first time he became aware of appellant's claim to the land was in the spring of 2008.

Following the hearing, the trial court entered a letter order summarizing the evidence and detailing its findings, and this letter order was incorporated into the decree. The trial court found that appellee and her predecessors had physically owned and possessed the homestead property since 1954, that this property was contiguous to the subject property, that appellant had admitted that he had knowledge of appellee's physical control and actions on the land as early as 1966, and that within seven years of this date, i.e., 1973, appellee's title to the subject property had vested by adverse possession. The trial court therefore granted appellee's complaint and quieted title to the property in appellee, as trustee of the L. Sanford Smith Testamen-

tary Trust. An order was entered to this effect on July 23, 2010. The order also dismissed appellant's counterclaim as moot and dismissed First Bank as a party.

Appellant appeals from the trial court's decision and argues that it erred in quieting title in appellee by adverse possession. This court reviews quiet-title actions de novo; however, we will not reverse the trial court's findings of fact unless they are clearly erroneous. *Emerson v. Linkinogger*, 2011 Ark. App. 234, 382 S.W.3d 806. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.* We give due deference to the trial court's superior position in determining witness credibility and the weight to be accorded their testimony. *Id.* Whether possession is adverse to the true owner is a question of fact. *Id.* Where the facts are not disputed in an adverse-possession case, however, the question presented on appeal is purely one of law, and we do not defer to the trial court on a question of law. *Id.*

The statutorily-required elements of adverse possession are codified in Ark.Code Ann. § 18–11–106 (Supp.2009), which provides as follows:

(a) To establish adverse possession of real property, the person, and those under whom the person claims, must have actual or constructive possession of the property being claimed and have either: (1)(A) Held color of title to the property for a period of at least seven years and during that time have paid ad valorem taxes on the property.

(B) For purposes of this subdivision (a)(1), color of title may be established by the person claiming adversely to the true owner by paying the ad valorem taxes for a period of at least seven years for unimproved land, provided the true owner has not also paid the ad valorem taxes or made a bona fide effort to pay the ad valorem taxes which were misapplied by the real estate and local taxing authority; or

(2) Held color of title to real property contiguous to the property being claimed by adverse possession for a period of at least seven years and during that time have paid ad valorem taxes on the contiguous property to which the person has color of title.

(b) The requirements of this section are in addition to all other requirements for establishing adverse possession.

(c) This section shall not repeal any requirement under existing case law for establishing adverse possession but shall be supplemental thereto, and, specifically, this section shall not diminish the presumption of possession of unimproved and unenclosed land created under § 18–11–106 by payment of taxes for fifteen consecutive years.

The requirements in this statute that the claimant show color of title and payment of taxes were enacted by the Arkansas General Assembly in Act 776 of 1995. *Emerson, supra.* Prior to that time, the claimant only had to prove the common-law elements of adverse possession. *Id.* Under common law, the claimant had to show that he had been in possession of the property continuously for more than seven years and that his possession was visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *White River Levee Dist. v. Reidhar*, 76 Ark.App. 225, 61 S.W.3d 235 (2001). This court has held that the additional statutory requirements contained in section 18–11–106 are not applied retroactively; therefore, where the claimant's adverse-possession claim has vested prior to 1995, the claimant need not satisfy these

additional elements. *Schrader v. Schrader*, 81 Ark.App. 343, 101 S.W.3d 873 (2003).

Appellant primarily argues that appellee failed to prove the necessary elements for adverse possession of the subject property because she failed to introduce sufficient evidence that she had paid taxes on the contiguous homestead property. Appellee did introduce a document at the hearing listing the property taxes paid on the homestead property from 1954 through the present time, and this document also stated in whose name the property was assessed each year. Because the witness from the title company who prepared the document could not testify as to who exactly had paid the taxes each year but only as to whose name was listed on the assessment, appellant objected to the testimony of this witness and to the introduction of this document. The document was admitted into evidence by the trial court over appellant's objection.

Regardless of whether this document constituted sufficient proof of payment of taxes on the homestead property, the trial court found that appellee did not have to prove the additional statutory elements enacted in 1995 because her adverse-possession claim vested prior to that time. According to the findings of the trial court, Sanford Smith, appellee's predecessor in title, obtained the subject property by deed in 1954 and physically possessed the property after that time. The trial court further found that appellant, by his own testimony, was aware that Sanford was farming the property since 1966 but took no action to assert control over the land until after Sanford's death in 2004. Thus, the trial court found that appellee's adverse-possession claim vested by 1973 at the latest and that appellee was not subject to the additional statutory requirements. This finding is not clearly erroneous. Although appellant contends that appellee could not have begun adversely possessing the subject property until her deed was recorded in 2008, as the trial court noted, a claimant may tack on the adverse-possession time of an immediate predecessor in title. *Barnett v. Gomance*, 2010 Ark. App. 109, 377 S.W.3d 317. Because appellee's late husband was her immediate predecessor in title, her right to the subject property vested prior to the 1995 statute governing adverse possession, and she is not subject to its additional requirements.

■ Appellant does not challenge the sufficiency of appellee's proof on the other elements of adverse possession, and the trial court found from the evidence presented that the actions of appellee and her predecessors in title on the subject property were visible, notorious, distinct, exclusive, and hostile. The trial court's finding that appellee was entitled to have title to the subject property quieted in her by adverse possession is not clearly erroneous, and we therefore affirm the decision. Appellee has filed a motion to correct the legal description set out in the decree, alleging that it contained a scrivener's error. Appellee notes that the quiet-title decree erroneously described the subject property as being located in "Township 2 South, Range 3 West," instead of in Township 2 South, Range 3 East. Therefore, we direct the trial court to modify the quiet-title decree such that it accurately reflects the correct legal description of the subject property.

Affirmed as modified.

VAUGHT, C.J., and BROWN, J., agree.