2015 Ark. App. 230

**Georgina PEAVLER, Appellant**

v.

**Shirley BRYANT, Appellee**

No. CV–14–697

Court of Appeals of Arkansas,
DIVISION I.

Opinion Delivered April 15, 2015

Michael Hamby, P.A., by: Michael Hamby, Greenwood, for appellant.

Walters, Gaston, Allison & Parker, by: Troy Gaston, Greenwood, for appellee.

BART F. VIRDEN, Judge

Appellant Georgina Peavler appeals from the Sebastian County Circuit Court's decree quieting title to a tract of land in appellee Shirley Bryant based on adverse possession. We agree with Peavler that the trial court erred in its decision, and therefore reverse and remand for the trial court to enter an order consistent with this opinion.

## I. Background

Freda A. Polton left a lot in Greenwood to her children, Peavler, Robert E. Mason, and Cathy H. Marvel. An executor's deed dated May 1993 indicates that Mason was to receive a life estate, and the property would then revert to Peavler and Marvel at Mason's death. In January 1994, Mar-

vel conveyed her interest in the property to Peavler.

A July 2002 warranty deed from Mason purported to convey fee-simple title in the land to Larry and Andrea Gaston. Property taxes from 1999 to 2002 were not paid, and the land was forfeited to the State. Andrea Gaston was the highest bidder at a tax sale, and in May 2004, a limited warranty deed was issued to her by the State. In January 2005, the Gastons issued a quitclaim deed to Shirley Bryant, Larry Gaston's mother. The Commissioner of State Lands issued two redemption deeds, each covering one of two parcels of land.[1] The first was to Bryant in March 2007 and reflects that she paid delinquent taxes owed from 2003 to 2005. The second redemption deed was issued in July 2010 to the Gastons, who paid delinquent taxes owed from 2007 to 2008. The Gastons conveyed their remaining interest in the property to Bryant in August 2010. Mason died in 2012.

In November 2012, Bryant filed a complaint to quiet title to the land. In an amended answer and counterclaim, Peavler denied the general allegations of Bryant's complaint and counterclaimed, alleging that the redemption deeds were void, voidable, or defective based on, among other things, lack of notice to her. Bryant amended her complaint to assert that she had adversely possessed the land.

## II. Hearing—March 28, 2014

Larry and Andrea Gaston, Bryant's predecessors, testified that they bought the land from Mason in 2002. They did not have a title search conducted, did not buy title insurance, and did not consult an attorney. They assumed that Mason owned

1. The property at issue was divided into two parcels. One pertained to Lot 3, and the other referenced a strip of land between Lots

2 and 3. The trial court determined that the two parcels were actually one, and no one disputes that decision.

the land. There was testimony that the Gastons had mowed, trimmed trees, fixed a drainage problem, and filled in a septic tank. Moreover, the City of Greenwood had worked with the Gastons and Bryant in obtaining an easement. The record shows that the house was demolished in 2007 because it was uninhabitable. Bryant claimed that she spent over $12,000 on taxes and maintenance.

Lisa Pelton, assistant director of the real-estate division for the Commissioner of State Lands, testified her office was notified in January 2002 by the clerk's office in the Greenwood District of Sebastian County that the land was being forfeited for nonpayment of taxes. The clerk's certification identified Mason and Marvel as the owners. Pelton testified that the executor's deed and assessment record should have put her office on notice of Peavler's interest; however, while certified mail was sent to Mason and Marvel, Peavler was not notified of the tax sales. Pelton testified that a legal notice also appeared in a newspaper prior to the sales, but Peavler's name was not listed as an owner.

Georgina Peavler testified that she and her half-brother Mason were not close and she had not seen him since their mother's funeral. Peavler said that, following her mother's death, she helped pay the taxes for a couple of years and Mason agreed to pay them after that. Peavler said she was unaware that Mason had purported to sell the property. She had assumed that Mason lived on the property until his death.

At the conclusion of the hearing, the trial court asked for post-trial briefs with proposed findings of fact and conclusions of law. In Peavler's post-trial brief, she proposed the conclusion that her remainder interest in the land did not become possessory until the death of Mason, who had only a life estate in the property pur-suant to the 1993 executor's deed, and that she thus had no right of action until 2012.

In its decree quieting title in Bryant, the trial court found that Bryant and her predecessors in title had paid taxes on the property continuously since 2003 and had color of title arising from the warranty deed from Mason to the Gastons and a limited warranty deed for forfeited property issued to Andrea Gaston. The trial court found that since 2002 Bryant and her predecessors had exercised actual, open, notorious, continuous, hostile, and exclusive control over the property with an intent to hold against the world and any other persons claiming an interest in the property.

### III. *Standard of Review*

This court reviews quiet-title actions de novo; however, we will not reverse the trial court's findings of fact unless they are clearly erroneous. *Smith v. Smith*, 2011 Ark. App. 598, 385 S.W.3d 902. We do not defer to the trial court on a question of law. *Id.* On de novo review of a fully developed record, when we can plainly see where the equities lie, we may enter the order that the circuit court should have entered. *Frigon v. Frigon*, 89 Ark. App. 180, 201 S.W.3d 436 (2005).

### IV. *Discussion*

Arkansas Code Annotated section 18–11–106(a) (Repl. 2003) provides that to establish adverse possession of real property, the person and those under whom the person claims must have actual or constructive possession of the property and have held color of title for a period of at least seven years and during that time paid ad valorem taxes. The requirements of this section are in addition to all other requirements for establishing adverse possession. Ark.Code Ann. § 18–11–106(c). To prove the common-law elements of ad-

verse possession, a claimant must show that she has been in possession of the property continuously for more than seven years and that her possession has been visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *Gibbs v. Stiles,* 2011 Ark. App. 302, 383 S.W.3d 453.

■ Peavler maintains Mason had only a life estate in the property and her remainder interest in the land did not become possessory until after Mason's death in 2012. We agree and conclude that neither Bryant's nor the Gastons' possession of the land was adverse to Peavler and that the statute of limitations could not have commenced running against Peavler until the death of the life tenant, Mason.

■■ As a general rule, in order to acquire title by adverse possession, the holding must be against one entitled to the possession of the land held, and having the right to bring an action for its recovery. *Ogden v. Ogden,* 60 Ark. 70, 28 S.W. 796 (1894). No principle of law is better established than that the possession of one claiming under a life tenant is not adverse to the remaindermen until the death of the life tenant. *Bradley Lumber Co. v. Burbridge,* 213 Ark. 165, 210 S.W.2d 284 (1948). In *Smith v. Maberry,* 148 Ark. 216, 229 S.W. 718 (1921), our supreme court wrote:

> It is well settled in this state that prior to the death of a tenant for life neither his possession nor the possession of his grantee is adverse to the remainderman or reversioner. Hence the statute of limitations does not begin to run against the remainderman or reversioner until the death of the life tenant. The reason is that no one can be in default in not bringing an action which he could not have maintained if brought, and that no statute of limitations can commence to run until the time comes when the

person claiming title or right of possession can successfully maintain his action. Neither the possession of the life tenant nor his grantee can, by any possibility, become adverse to the reversioner or remainderman, for the reason that such possession is not an interference with the rights of the latter.

*Id.* at 219–20, 229 S.W. at 719. "So far as concerns the statute of limitation, it could not be put into operation against the remaindermen prior to the expiration of the estate of the life tenant merely because the entry was under a tax deed." *Champion v. Williams,* 165 Ark. 328, 336, 264 S.W. 972, 974 (1924) (affirming nevertheless because confirmation decree, which recited proper notice, was binding on remaindermen, as well as life tenants).

The trial court's ruling on adverse possession in favor of Bryant effectively avoided the question of the validity of the tax sales under which Bryant initially claimed ownership of the property. In *Champion, supra,* our supreme court wrote:

> The tax sale, *if valid,* would have barred the right of all interested parties, those holding remainder interests as well as the life tenant, for the sale operated in rem, and all parties were bound by it, but, the sale being void, one who entered under the sale was a mere trespasser.

*Id.* at 335, 264 S.W. at 974 (emphasis added).

■ In cases involving redemption of tax-delinquent lands, strict compliance with the requirement of notice of the tax sales themselves is required before an owner can be deprived of her property. *Rylwell, LLC v. Men Holdings 2, LLC,* 2014 Ark. 522, 452 S.W.3d 96. The United States Supreme Court held in *Jones v. Flowers,* 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), "Before a State may

take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and an opportunity for hearing appropriate to the nature of the case.'" *Id.* at 223, 126 S.Ct. 1708 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Any sale of tax-delinquent land without proper notice is void. *Rylwell, supra.*

While Peavler was entitled to notice of the tax sales, a representative from the Commissioner of State Lands testified that Peavler did not receive any notice despite the fact that her name and address were available on documents in the Commissioner's file. No one disputes that Peavler did not receive notice; therefore, the tax sales were void and could not have extinguished Peavler's remainder interest. We direct the circuit court to enter an order quieting title to the land in Peavler.

Reversed and remanded with directions.

Glover, J., agrees.

Gruber, J., concurs.

Rita W. Gruber, Judge, concurring.

I agree with the majority that we must reverse and remand. However, I respectfully concur because the majority relies almost exclusively on *Champion v. Williams,* 165 Ark. 328, 264 S.W. 972 (1924). Based on the lack of constitutional notice of the tax sale, this case should be predominantly decided under *Jones v. Flowers,* 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d. 415 (2006); *Rylwell, LLC v. Men Holdings 2 LLC,* 2014 Ark. 522, 452 S.W.3d 96; and *Arlands, LLC v. Farmers Bank & Trust Co.,* 2009 Ark. App. 747, 2009 WL 3762851.